DOROTHY BARTLETT, Plaintiff-Appellant and Cross-Appellee, *v.*
MALCOLM BARTLETT, Defendant-Appellee and Cross-Appellant.

Third District No. 78-397

Opinion filed April 30, 1979.

Ralph J. Coletta, of Peoria, for appellant.

E. Wayne Clark, of Frings, Bagley & Atherton, of Pekin, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

In a 1963 divorce decree plaintiff Dorothy Bartlett was awarded custody of her two children, and defendant Malcolm Bartlett was ordered to pay $20 per week child support. In 1978, plaintiff instituted a contempt proceeding to collect unpaid support, and at the hearing which followed, plaintiff testified, *inter alia*, that defendant had made no support payments since July 1970; that she had married Richard Cassidy in 1969, and defendant had also remarried; that in July of 1970, she agreed defendant could stop paying support if he would stop seeing the children. The parties stipulated that, since the divorce, $9,280 support was unpaid according to the records of the circuit clerk. The trial court ruled that defendant owed $1,340 in arrearages for the period prior to 1970 and reserved decision on the question of arrearages after 1970.

Plaintiff then filed a petition for future child support payments for their son Michael who was then 16 years old. Their daughter Loretta was 19 years of age and was emancipated. Plaintiff also filed a petition to adjudicate manner of payment of the $1,340 arrearages owed by defendant. Defendant's answer to the petition for future support for Michael included an affirmative defense alleging that the 1970 agreement was a bar to future support, but that defense was later stricken by the trial court. At the hearing on the petition plaintiff testified that her present husband had supported the children since 1970, but that he was now separated from plaintiff and was providing her with very little financial help. Defendant testified to his present financial difficulties, including considerable indebtedness, and also testified to the 1970 agreement, which, he said, was made because his weekly visits with the children were upsetting to plaintiff and to the children. Plaintiff's attorney admitted that the parties made the agreement and stated that the only question was whether it was against public policy.

The trial court found that between 1970-78 defendant gave up his visitation rights and, as agreed, made no support payments; that plaintiff was estopped from claiming support for the period from mid-1970 to May 3, 1978; and that defendant was not in contempt for the pre-1970 arrearages. The court ordered defendant to pay the arrearages by September 4, 1978, and also ordered him to pay $30 per week support for Michael henceforth.

Plaintiff has appealed from that portion of the order which found her to be estopped from collecting arrearages for the years 1970-78, while defendant has cross-appealed from the order holding him liable for arrearages prior to 1970.

■■ ■ Plaintiff argues that the evidence did not establish grounds for equitable estoppel. Her argument seems to ignore the testimony which appears in the record. Both plaintiff and defendant testified to an

agreement whereby plaintiff and her new husband (Cassidy) would support the two Bartlett children if defendant would forego his right to visitation. There is no dispute that defendant did stop visiting his children and also that he stopped making his support payments. Thus it is clear that plaintiff expressly agreed to waive her right to support and that defendant relied upon that agreement to his detriment when he relinquished his right to maintain a parental relationship with his children. We have searched the record and can find nothing to indicate that as a result of this agreement the children were left in want or lacked in any way for either material needs or parental guidance. Plaintiff claims that an agreement to waive child support is contrary to public policy. (*Nelson v. Nelson* (1st Dist. 1950), 340 Ill. App. 463, 92 N.E.2d 534.) We do not agree. The *Nelson* case would seem to be a deviation from the general rule applied by the court to give effect to agreements between spouses to reduce or waive support, particularly where, as here, the supporting parent changes his position for the worse in reliance upon the agreement. (*Ellingwood v. Ellingwood* (1st Dist. 1975), 25 Ill. App. 3d 587, 323 N.E.2d 571; *Anderson v. Anderson* (2d Dist. 1964), 48 Ill. App. 2d 140, 198 N.E.2d 342; *Wolfe v. Wolfe* (1st Dist. 1940), 303 Ill. App. 188, 24 N.E.2d 871. See also 16A Ill. L. & Prac. *Divorce* §245 (1971); Annot., 57 A.L.R.2d 1139, §4(a) (1958).) We think the circumstances here are such that the trial court was fully justified in giving effect to the agreement by the parties to waive payment of support from mid-July 1970 to May 3, 1978. Thus the ruling that plaintiff was estopped to claim support for the period covered by the agreement was not erroneous.

In his cross-appeal defendant challenges the authority of the trial court to find him liable for $1,340 arrearages for the period before 1970 in this contempt proceeding. We note that defendant stipulated to the amounts of unpaid support as shown on the record of the Circuit Clerk of Peoria County and that he does not challenge the finding that $1,340 was in fact unpaid for the period before 1970. Instead he argues that the only question before the court was whether defendant's failure to pay support was wilful and contumacious, and that after ruling that he was not in contempt, the court should have done nothing more unless plaintiff filed a petition for money judgment. He claims to have been denied an opportunity to present possible defenses such as laches.

 Defendant cites no cases which would require us to take such a restrictive view of the equitable powers of the court. For example, he relies upon *Wick v. Wick* (1960), 19 Ill. 2d 457, 167 N.E.2d 207, where the court stated that the power to enforce payment of support money by contempt is limited to cases of wilful and contumacious refusal to obey the order of the court. However, that holding does not preclude the trial court from making a finding as to the amount of arrearages even though

defendant's conduct was not wilful and contumacious. Applicable here are the observations made in a similar case, *Daum v. Daum* (5th Dist. 1973), 11 Ill. App. 3d 245, 249, 296 N.E.2d 614, 616, as follows:

> "The trial court is allowed wide latitude in hearings of this nature. The record indicates that there was no substantial denial of justice to the defendant by the court's actions. The contention that the defendant was denied justice is without merit and cited authority by the defendant are readily distinguishable from the case at hand."

Here defendant had an opportunity to present any defense he might have and did in fact attempt to establish laches by stating that he had lost some relevant records as a result of the long delay in enforcement. However, on cross-examination he admitted that his records for past years were stored in his attic and that he had not attempted to look at them in preparation for this case.

We conclude, therefore, that defendant has not sustained his burden of demonstrating reversible error. We affirm the judgment of the Circuit Court of Peoria County.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.