In re MARRIAGE OF BETTY STRAND, Petitioner-Appellant, and STANLEY STRAND, Respondent-Appellee.

First District (4th Division)    No. 80-416

Opinion filed July 24, 1980.

George W. Brooks, of Chicago, for appellant.

Ebers, Metskas, Kyros & Associates, of Chicago (John C. Gockley, Jr., of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The petitioner, Betty Strand, appeals from an order of the circuit court of Cook County denying her petition for child support arrearages from the respondent, Stanley Strand. On appeal she argues (1) the evidence did not support a finding either that there was an agreement between the parties to reduce child support or that the doctrine of

equitable estoppel should apply; (2) the Statute of Frauds (Ill. Rev. Stat. 1979, ch. 59, par. 1 *et seq.*) bars the enforcement of the alleged agreement; and (3) the trial court erred in allowing certain checks into evidence.

Betty Strand and Stanley Strand were divorced on March 12, 1973. The divorce decree directed that Stanley Strand pay $100 per week for support of the parties' two minor children, Thomas, born November 6, 1956, and Janet, born May 8, 1961.

On July 11, 1979, Betty Strand filed a petition for child support arrearages alleging that beginning November 6, 1975, Stanley Strand reduced the child support payments from $100 per week to $50 per week. She alleged that there had been no agreement to reduce the child support payments.

In his answer Stanley Strand admitted that the payments had been reduced from $100 to $50 per week. He alleged as an affirmative defense that Betty Strand had agreed to the reduction in child-support payments in exchange for his agreement to help their son, Thomas, leave Betty Strand's house and to assume financial responsibility for Thomas.

At the hearing on the petition, Stanley Strand testified that on November 6, 1974, he had a conversation with Betty Strand concerning their son Thomas. He testified as follows concerning that conversation:

> "She [Betty Strand] said that she could not handle Thomas anymore. She was going to ask him to leave and for me to do something either to him or do something. I said I could not take him because I was living in one room. But I would try to help him financially, which I did.
>
>            * * *
>
> She said that if I would that she would cut the payments down, our child support."

Stanley Strand testified that after that conversation Thomas moved out of his mother's home and he began making payments directly to Thomas "to aid him in his house and food and clothing." Forty-two checks signed by Stanley Strand and payable to Thomas Strand were introduced into evidence. The checks were dated December 4, 1974, to December 14, 1976, and totaled $3,560. Betty Strand's counsel objected to the admission of these checks on relevancy grounds. Stanley Strand testified that he also paid $785 to Thomas in cash.

Stanley Strand said Thomas began working at Strand Trucking in late 1976 or early 1977. He stated that none of the 42 checks represented payment for services rendered by Thomas to Strand Trucking. According to his testimony, Betty Strand never objected to the reduced payments.

Betty Strand testified that although she had had conversations with Stanley Strand concerning Thomas' behavior, she did not discuss child support with him and she did not at any time agree to a reduction in child

support. She stated that Thomas lived with her until late in the summer of 1975. During the time Thomas lived with Betty Strand he did not give her any money. Betty Strand did not know that Thomas was receiving money from his father. According to Betty Strand's testimony, Thomas began working for his father prior to September of 1975.

■■ It is well settled in Illinois that child support payments cannot be terminated or modified as to time or amount except by order of court and then only as to amounts which have not yet accrued. (*Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 390 N.E.2d 488; *Strum v. Strum* (1974), 22 Ill. App. 3d 147, 317 N.E.2d 59.) This rule has been codified in section 510(a) of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) Section 510(a) provides that child support orders can be modified only "as to installments accruing subsequent to the filing of the motion for modification." Further, where an order is entered for the support of more than one child but the order does not specify the amount of support for each child, the unilateral *pro rata* reduction of the support payments upon the emancipation of one child is not permissible. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.) Rather, the entire amount of support ordered must be paid until the youngest child has reached majority or until the order of support is modified. *Finley.*

Therefore, Stanley Strand was obligated to pay $100 per week to Betty Strand until their daughter Janet reached majority. The proper procedure for Stanley Strand to have followed would have been to petition the court for a reduction in child support payments.

■■ However, as an exception to the otherwise inflexible rule that child support payments become a vested right as they accrue, the courts will, in a proper case, give effect to an agreement between the parties to reduce child support payments or will apply the doctrine of equitable estoppel. (*In re Marriage of Matzen* (1979), 69 Ill. App. 3d 69, 387 N.E.2d 14; *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 323 N.E.2d 571.) The test for determining the validity of an agreement between the parties to reduce child support payments is whether that agreement meets the test of validity applicable to all releases. (*Johnson v. Johnson* (1975), 26 Ill. App. 3d 64, 324 N.E.2d 450; *McAdams v. Scullin* (1977), 53 Ill. App. 3d 374, 368 N.E.2d 1036.) Equitable estoppel arises where:

> "the voluntary conduct of one party precludes that party from asserting rights against another person who has, in good faith, relied upon such conduct to change his position for the worse. [Citation.]* * *
>
> * * * [The] defendant has the burden of proving estoppel by clear, precise and unequivocal evidence if he seeks to avoid [the]

plaintiff's vested rights to support. [Citations.]" *In re Marriage of Matzen* (1979), 69 Ill. App. 3d 69, 72, 387 N.E.2d 14, 16.

Betty Strand contends that the doctrine of equitable estoppel should not be applied to bar her recovery of child support arrearages because there was no testimony, allegation, or evidence of detrimental reliance. She argues also that Stanley Strand did not meet his burden of proving equitable estoppel by clear and convincing evidence.

Stanley Strand testified that his wife agreed to the reduction in child support on the condition that he help his son Thomas find a place to live and that he support Thomas financially. He testified further that he paid his son more than $4000 over a two-year period for housing, food and clothing. According to Stanley Strand, Betty Strand did not at any time during the almost five-year period between the first reduced payment and the filing of her petition for arrearages object to the reduction in child-support payments. We believe this testimony supports the conclusion that Stanley Strand's payments to his son were made in reliance upon the statements and conduct of Betty Strand. In so relying, Stanley Strand changed his position for the worse because he was under no duty to support his emancipated son.

■ The evidence presented was clear and convincing. Stanley Strand's testimony was corroborated by the introduction into evidence of 42 checks payable to Thomas Strand. Further, although mere passage of time or failure to make demand does not in and of itself establish equitable estoppel (*Matzen; Jozwick*), these factors were additional corroboration of Stanley Strand's testimony. Our conclusion is not altered by the fact that Betty Strand testified she never agreed to a reduction in child support and that she had asked Stanley Strand to pay arrearages. The credibility of witnesses is a question of fact for the trial court. *Motykowski v. Motykowski* (1972), 4 Ill. App. 3d 957, 282 N.E.2d 458.

■ Betty Strand next contends that the alleged agreement was that Stanley Strand would pay child support of $50 per week until May 8, 1979, the date of Janet's 18th birthday. She argues that as May 8, 1979, is more than one year from the date of the alleged agreement that its enforcement is barred by the Statute of Frauds. (Ill. Rev. Stat. 1979, ch. 59, par. 1.) However, the test for determining whether an agreement is within section 1 of the statute is not whether it was performed within one year but rather whether "when the agreement was made, it could have been performed within a year; and if so, it does not come within the statute." (*Stein v. Malden Mills, Inc.* (1972), 9 Ill. App. 3d 266, 272, 292 N.E.2d 52, 57.) Here the alleged agreement could have been performed within one year, if, for example, Janet had died within that period. The alleged contract is therefore not within the statute. See 20 Ill. L. & Prac.

*Statute of Frauds* §41 n.8 (1956); and see *White v. Murtland* (1874), 71 Ill. 250, where our supreme court held that a contract by which one party agreed to support a young girl until she became of age was not within the statute although the girl was not within a year from majority because the child might have died within one year.

■ Betty Strand's last argument is that the admission into evidence of the 42 checks was in violation of the hearsay rule. She did not object to the admission of the checks on hearsay grounds below and did not raise the issue of inadmissibility in her post trial motion. The issue is thus waived for purposes of review. *Johnson v. Jackson* (1963), 43 Ill. App. 2d 251, 193 N.E.2d 485.

For the reasons set forth above the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.