**Donnell McCOWEN, Plaintiff,**

v.

**CITY OF EVANSTON, et al., Defendants.**

**No. 81 C 866.**

United States District Court, N. D. Illinois, E. D.

Feb. 1, 1982.

---

Donald Shapiro, Chicago, Ill., for plaintiff.

Ellen Alexander, Asst. Corp. Counsel, Evanston, Ill., Norman Bloch, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Plaintiff Donnell McCowen instituted this civil action pursuant to 42 U.S.C. § 1983 (1976). He alleges that he promised sometime in 1978 to repair and restore defendant Homean Baxter's "junk condition" 1966 Porsche automobile. In return, Baxter agreed to assign McCowen a 1961 Mercedes-Benz 190 SL automobile, also in "junk condition." During the next year or so McCowen worked on both cars. However, for reasons presently unclear, the parties at some point lapsed into serious dispute. On January 28, 1980, Baxter decided to resolve the matter by forcibly retaking the Mercedes from its parking space in front of the home of plaintiff's brother in Evanston, Illinois. He hired a private towing service to assist him; the car at that time was still inoperable.

Plaintiff's federal claim derives from the fact that Baxter also enlisted the aid of the Evanston police department in effectuating his plan. It is alleged that Baxter registered a complaint and was accompanied by Officer Richard Witney when he approached the parked Mercedes. Soon thereafter, plaintiff also came upon the scene. According to Witney's affidavit, both men began to argue in a violent manner. Witney ordered them to stand apart, and radioed his supervisor, Sergeant Charles Heuer, for assistance. When Heuer arrived, Baxter produced a notarized Ohio title to the car bearing his name.[1] McCowen was told to go home and obtain whatever proof of

---

1. Plaintiff alleges that this title was fraudulently obtained. No underlying facts are plead in support of this charge, despite Rule 9(b)'s command to the contrary.

ownership he might have. When he returned empty-handed, the police officers determined that Baxter's claim was superior and that he would be allowed to remove the vehicle. Officer Witney then left to answer another call while Officer Heuer stayed behind and made sure that plaintiff did not obstruct defendant's attempt to tow the Mercedes.[2]

Plaintiff claims that it was constitutionally improper for Officers Witney and Heuer to have assumed the role of "judge and jury"; by doing so they deprived plaintiff of his property without due process of law and thereby became liable for damages. Plaintiff asks in Count one for $25,000, the alleged fair market value of the Mercedes at the time of the January 28 incident. He asks also for $100,000 in punitive damages. The relief is sought from Witney, Heuer and their employer, the City of Evanston.

Counts two and three are state law claims over which pendent jurisdiction is claimed. They are asserted against Baxter and another private individual, Carol Dixon.[3]

Count four seeks damages from the City of Evanston alone. As plaintiff has since voluntarily dismissed this claim, no more will be said concerning it.

Currently before the Court is a motion to dismiss, or in the alternative to grant summary judgment against, the claims listed in Count one. In that the parties have submitted matters outside of the pleadings the motion shall be treated as one for summary judgment. Fed.R.Civ.P. 12(b). So treated, the motion is granted insofar as it attempts to hold the City of Evanston liable for the incidents described in the complaint; it is denied insofar as it seeks dismissal of the claims against Officers Witney and Heuer.

### I.  Liability of the City of Evanston

■ Plaintiff lists no specific allegations against Evanston in Count one. His theory must therefore be that the City can be held liable solely because it is the employer of the allegedly culpable officers. This is incorrect. Municipal liability under § 1983 must be based upon more than *respondeat superior*. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The City's motion for summary judgment is accordingly granted.

### II.  Liability of Officers Witney and Heuer

■ For plaintiff to prevail on his due process allegation, he must establish four propositions: (1) that at the time of the January 28 incident, Officers Witney and Heuer acted under color of state law; (2) that plaintiff had a recognizable property interest in the Mercedes; (3) that defendants' acts caused plaintiff to be deprived of his property; and (4) that the above deprivation contravened the fundamental notions of fairness embedded within the concept of due process. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The present motion can thus be granted in the officers' favor only if it appears certain that plaintiff must fail in his attempt to prove up one or more of the above elements.

It is undisputed that Heuer and Witney acted under color of state law at the time of the relevant incident. Both men responded to the property dispute in their capacity as

---

**2.**  Later that day, McCowen went to the Evanston police station bearing an alleged title to the Mercedes. Heuer claims that it was "blank." Heuer Aff. at ¶ 8. Witney claims that it was "made out to Homean Baxter and not assigned to any other person." Witney Aff. at ¶ 6.

**3.**  The present motion does not attack the sufficiency of these claims. I have grave doubts, however, as to whether jurisdiction exists to hear them at all. Both revolve around incidents which are far removed from those comprising plaintiff's federal claim. The requisite

"common nucleus of operative fact" seems to be lacking. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Moreover, in both counts, plaintiff seeks to impose liability on "pendent parties," those against whom no federal claim is asserted. It might be well within my power to refuse to hear these charges on discretionary grounds alone. *Cf. Moor v. County of Alameda*, 411 U.S. 693, 710–8, 93 S.Ct. 1785, 1796–1800, 36 L.Ed.2d 596 (1973).

police officers. They did not happen upon the scene as merely interested citizens.

■ The exact nature of plaintiff's interest in the Mercedes cannot be precisely determined from the pleadings and exhibits which have been submitted thus far. Plaintiff alleges and asserts that he obtained title to the Mercedes in 1978, at the time the original contract was formed. Defendants respond that any such claim is defective since the underlying oral contract was incapable of performance within a year and thus void under the Statute of Frauds. *See, e.g., In re Marriage of Strand*, 86 Ill. App.3d 827, 831, 42 Ill.Dec. 37, 39–40, 408 N.E.2d 415, 417–8 (4th Dist. 1980). This contention fails for the simple reason that no facts support a finding of the requisite impossibility. Nevertheless, serious doubts concerning plaintiff's claim are generated by Witney and Heuer's affidavits. Both reveal that only Baxter, and not McCowen, was able to produce any evidence of ownership. All this indicates, however, is that a material question of fact remains to be resolved at trial. It does not mean that plaintiff will inevitably fail in his showings. Defendants' summary judgment motion cannot be granted on this basis.

■ More subtle questions arise out of the issue of "deprivation." Defendants argue that all they did was prevent a breach of the peace and offer an opinion as to who was right. Any deprivation plaintiff suffered was thus inflicted not by them, but by Baxter and his tower: "Nothing in plaintiff's allegations demonstrates that Heuer's presence changed the outcome or could have changed the outcome of Baxter's summons of a tow truck." Reply Memorandum at 9. Heuer's own affidavit refutes this argument. There he acknowledges that he did more than merely restrain the parties while judging Baxter to be the property owner. He admits that he also affirmatively authorized Baxter's removal efforts and that he supervised the actual towing so as to insure that it proceeded without incident. By so doing, he "enforced" a "judgment" he had rendered. Thus, while it may be true that Baxter might have physically prevailed and towed the Mercedes even without police assistance, it seems clear that Witney [4] and Heuer materially assisted this process. They are potentially responsible for any deprivation that might have occurred.[5]

■ Defendants' hopes for summary judgment thus rest upon a purely legal argument, i.e., that no due process violation occurs when policemen adjudicate conflicting claims to property by ordering one citizen to relinquish his hold in favor of another. Plaintiff's counterposition, in its harshest form, seems to be that the constitution forbids all such adjudications, that the lack of judicial supervision inherent in such a procedure totally undercuts its viability. For support, plaintiff relies on the line of cases growing out of *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). These decisions mandate that numerous safeguards must be present whenever an individual (1) claims property which is held by another, and (2) makes an ex parte request for state assistance in transferring possession to him prior to a full-scale trial on the merits of the underlying civil dispute.[6] Thus, if such a transfer threatens a

---

**4.** Officer Witney argues separately that even if an erroneous judgment was made, he did not make it. Rather, his superior, Officer Heuer, was in charge and only he should be held responsible for the actions taken. I am not persuaded. Heuer's affidavit indicates that Witney left the scene of the incident only after the basic "judgment" had first been rendered in Baxter's favor. Very possibly, Officer Heuer consulted with Witney in reaching this determination. Witney may very well be able to prove otherwise at trial. He has not made his case thus far.

**5.** Plaintiff argues alternatively that Heuer and Witney "seized" his property within the meaning of the Fourth Amendment. Seizures are usually thought to occur only when the state transfers possession of an object from a private owner to itself. State-ordered transfers between private individuals are in turn usually viewed only as "deprivations," not "seizures." Plaintiff has cited no case establishing a contrary rule.

**6.** By contrast, the constitution apparently restrains in no way the power of the state to

"probability of irreparable injury," *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608, 95 S.Ct. 719, 723, 42 L.Ed.2d 751 (1975),[7] the state may grant the ex parte request only upon the determination of a "judicial officer," *id.* at 606–7, 95 S.Ct. at 722–23, a category which does not include policemen.

This doctrine is not dispositive here for the simple reason that no ex parte determination was made. Officers Witney and Heuer rendered their "verdict" only after first offering plaintiff an opportunity to respond to Baxter's claims.[8] This case cannot be decided with bare citations to *Fuentes* and *North Georgia.*

Nor do I believe that it would be proper to extend to these facts the *North Georgia* absolute ban on non-judicial decisionmaking. Were this view adopted, the officers' behavior could be deemed unconstitutional without regard to the reasonableness of their actual "judgment." They could thus be liable if they had intentionally deprived plaintiff of his property by acting in the face of certain knowledge that he had indeed possessed actual property interests in the Mercedes. *A fortiori*, they could be liable if they had recklessly disregarded such a possibility. But most importantly, they could be liable as well even if their judgment had evidenced mere negligence, or, indeed, no fault at all. Even if they had reasonably determined that plaintiff had no rights at all in the property in question, a decision in favor of the adverse claimant would nevertheless subject them to civil liability if, in a post-hoc hearing, plaintiff

could merely establish that he had indeed possessed one property interest which had been "deprived." Extension of *North Georgia* to these facts would in essence therefore subject policemen who are forced to make snap decisions to a regime of strict liability. The unfairness of such a rule is patent.[9]

Reference to the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) buttresses my decision not to rely upon the doctrine outlined in *North Georgia.* In *Parratt*, the court held that a state actor's mere negligent deprivation of property is not unconstitutional when the victim can be made whole in a post-deprivation state court proceeding. Here, as defendants point out, plaintiff, assuming the truth of his factual allegations, could have sued Baxter in state court for replevin or conversion. To the extent, then, that plaintiff is claiming that the substantive quality of Witney and Heuer's decision is irrelevant, and that the Constitution is offended by the mere fact that they decided against him *per se*, plaintiff's theory would not only be unfair, as argued before, but potentially in conflict with *Parratt* as well. For even if McCowen could prove that he had indeed possessed rights in the Mercedes, if the facts further established that Heuer and Witney had been guilty of only negligence in failing to recognize these rights, *Parratt*, on these facts, would mandate a finding of no constitutional deprivation. The availability of Illinois state law relief would have afforded plaintiff all the process he had been due.[10]

---

authorize purely private self-help measures. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

7. This was surely the case here for, as plaintiff argues, "a restored 1961 Mercedes-Benz is a rare commodity with 'antique' status." Response Memorandum at 11.

8. This was perhaps somewhat fortuitous as the papers seem to indicate that McCowen simply happened upon the scene. However, whether fortuitous or not, the fact remains that Officers Heuer and Witney did not act upon contentions of only one claimant.

9. Of course, the officers could still assert a good-faith defense. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). However, this doctrine would not, in my judgment, provide sufficient protection, especially since exoneration on this basis requires difficult showings of subjective intent. *Brubaker v. King*, 505 F.2d 534, 536–7 (7th Cir. 1974).

10. Plaintiff has assailed the adequacy of these state law remedies on numerous grounds, none of which is compelling either individually or in combination. Such remedies "*could* have fully compensated [plaintiff] for the property loss he suffered and ... are sufficient to satisfy the requirements of due process." *Parratt v. Tay-*

On the other hand, if the facts establish both the actual existence of McCowen's property rights and more than negligence on the part of the defendants in failing to respect these rights, the constitutional analysis might differ. Prior to *Parratt*, this was clearly the law. The Seventh Circuit had often recognized that § 1983 encompasses property deprivation claims based on allegations of either intentional or reckless state behavior. *See, e.g., Beard v. Mitchell*, 604 F.2d 485, 494 (7th Cir. 1979). Whether this doctrine survived *Parratt*, however, requires some discussion. Literally, *Parratt* deals only with allegations of negligence. Nevertheless, its seeming rationale is that post-hoc relief satisfies due process whenever a plaintiff challenges state behavior which consists of a "random and unauthorized act by a state employee" rather than a regularized procedure. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1915–6, 68 L.Ed.2d 420 (1981). If so, its logic could apply even to allegations of reckless or intentional acts which are "random and unauthorized." [11] At least two courts have so reasoned and have accordingly held that no constitutional claim can be based on such conduct when it is potentially redressable under state law. *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1352 (9th Cir. 1981); *Sheppard v. Moore*, 514 F.Supp. 1372, 1376 (M.D.N.C.1981). Alternatively, *Parratt's* logic could be confined merely to allegations of negligence. This, after all, was the apparent view of Justices White, Blackmun, and possibly Powell. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1918, 68 L.Ed.2d 420 (White and Blackmun, JJ., con-

curring) (1981); *id.* 101 S.Ct. at 1921–2 (Powell, J., concurring in the result); *accord, Parker v. Rockefeller*, 521 F.Supp. 1013, 1016 (N.D.W.Va.1981); *see generally Bonner v. Coughlin*, 657 F.2d 931, 933 n.3 (7th Cir. 1981).

The correct interpretation is far from clear. As Judge Shadur recently noted, "Only three other Justices joined entirely in Justice Rehnquist's *Parratt* opinion for the Court. It is not an easy task to parse that opinion and the several concurring opinions . . . ." *Eberle v. Baumfalk*, 524 F.Supp. 515, 518 n.4 (N.D.Ill.1981). As best as I can tell, however, the Seventh Circuit seems to have opted for the narrower negligence-only interpretation. In *Yusuf Asad Madyun v. Thompson*, 657 F.2d 868 (7th Cir. 1981), the Court reviewed claims of both negligent and intentional deprivations of property. As to the former allegation, the Court held that the rule of *Parratt* applied. However, in the very next paragraph, *Parratt* was ignored and the bare allegation of intentional conduct was deemed sufficient in itself to state a claim. *Id.* at 873. Such an analysis indicates, albeit somewhat obliquely, that an intentional or reckless deprivation of property remains actionable under § 1983 even when state law offers the possibility of after-the-fact monetary relief.[12] Until the Seventh Circuit indicates otherwise, I will assume that this is the view of the Court.[13]

Therefore, plaintiff can establish liability by proving first, that defendants actually deprived him of a property interest in the Mercedes, and second that they did so

lor, 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981) (emphasis added); *id.* 101 S.Ct. at 1923 n.1 (Marshall, J., concurring in part and dissenting in part); *cf. Ingraham v. Wright*, 430 U.S. 651, 677 n.45, 97 S.Ct. 1401, 1415–16 n.45, 51 L.Ed.2d 711 (1977).

**11.** The challenged behavior of Officers Heuer and Witney satisfies the latter test; "[I]t is not within the authority of police officials to become engaged in civil disputes." Reply Memorandum at 4.

**12.** The court has indicated in clearer terms that *Parratt* will not apply to cases involving an intentional or reckless deprivation of life.

*Richardson v. City of Indianapolis*, 658 F.2d 494, 502 n.3 (7th Cir. 1981). While this ruling lends some support for my decision, it is not dispositive. Deprivations of life and liberty differ in material respects from deprivations of property. *Ingraham v. Wright*, 430 U.S. 651, 701, 97 S.Ct. 1401, 1427–28, 51 L.Ed.2d 711 (Stevens, J., dissenting); *see generally id.* at 695, 696 n.12, 97 S.Ct. at 1424, 1425 n.12 (White, J., dissenting).

**13.** In view of the uncertainty surrounding this question, interlocutory review pursuant to 28 U.S.C. § 1292(b) might be appropriate.

either intentionally [14] or with reckless disregard of such possibility.[15] In light of this rule, the issue to be resolved now is whether the affidavits and documents on file establish that plaintiff will inevitably fail in his attempt to prove up the required mental state. Resolution of this issue depends in turn upon an understanding of what information the officers possessed at the time they decided in favor of Baxter. They knew that Baxter could produce a title which "was current and appeared valid," Witney Aff. at ¶ 4, and that McCowen could not, even though he had been given the opportunity to return home and procure his papers. Were these the only pertinent facts, I would not hesitate to grant defendants' motion in its entirety. However, there is more. Plaintiff claims that Baxter acknowledged the existence of the original oral agreement (and presumably McCowen's rights thereunder) in the presence of the officers. McCowen Aff. at ¶ 8. Witney's "Field General Report" confirms this assertion to some extent, for it reveals that Baxter informed Witney that McCowen was authorized to hold the Mercedes "in good faith" until the Porsche repairs were completed, "at which time ... the Mercedes was to be Mr. McCowen's." See Exhibit B to Response Memorandum. To be sure, Heuer completely denies that Baxter ever acknowledged "any ownership right in Mr. McCowen." Heuer Aff. at ¶ 4. Nevertheless, in light of the other evidence already mentioned, this statement cannot singlehandedly form the basis for summary judgment. Trial is needed to determine whether the officers had sufficient notice of the possibility that McCowen might have had a right to possess the Mercedes.

■■■ A few caveats should be stressed. It is conceivable that plaintiff might establish the existence of a constitutional tort, yet still fail to recover damages. For example, even if defendants conceded that their behavior was unconstitutional, they might nevertheless prove that on January 28, 1980 they were guided by a subjective and reasonable belief to the contrary. Such proof would make out a good faith defense completely exonerating them. Cf. Brubaker v. King, 505 F.2d 534, 536–7 (7th Cir. 1974). Moreover, plaintiff's claimed entitlement to $25,000 worth of compensatory relief is questionable under any circumstances. His failure to seek post-deprivation state law redress, though not destructive of his federal claim per se, might nevertheless be relevant to a calculation of the extent of the "actual injury" inflicted by defendants. See generally Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). McCowen's claim for punitive relief, furthermore, can succeed only if defendants "knowingly and maliciously" deprived him of his rights. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981).

### III. Order

Pursuant to plaintiff's voluntary dismissal, Count four of the complaint is dismissed with prejudice. Defendants' motion for summary judgment on Count one is granted to the extent it seeks dismissal of the charges against the City of Evanston. In all other respects, the motion is denied.

---

**14.** Of course, even an intentional deprivation is not actionable if it is excusable, e.g., a necessary act of self-defense. Ellis v. City of Chicago, 667 F.2d 606, 610 (7th Cir. 1981); see generally Richardson v. City of Indianapolis, 658 F.2d 494, 501 (7th Cir. 1981). Defendants have thus far suggested no reason which would justify an intentional deprivation of plaintiff's Mercedes.

**15.** What this means, of course, is that if the officers' decision in favor of Baxter evidenced the requisite level of culpability, cf. Little v. Walker, 552 F.2d 193, 197 n.8 (7th Cir. 1977),

cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978) (recklessness determined objectively), it should not have been made. Rather, "the officers should have told Baxter to sue McCowen in a civil action to properly resolve the matter." Response Memorandum at 6. Defendants claim that "it would have been an equal or greater violation of the police officer's authorized role had Sergeant Heuer prevented Baxter from removing the vehicle by interfering in the dispute on McCowen's side." Reply Memorandum at 10. Why this is so is never explained.