BARBARA D. BLISSET, n/k/a/ Barbara Trueblood, Plaintiff-Appellant and Cross-Appellee, v. ALLEN R. BLISSET, Defendant-Appellee and Cross-Appellant.

Fourth District   No. 4—85—0642

Opinion filed July 3, 1986.—Rehearing denied August 5, 1986.

William J. Thomas, of Peoria, for appellant.

William Stanley White, of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff, Barbara D. Blisset, and defendant, Allen R. Blisset, were divorced in the circuit court of Sangamon County on December 23, 1975. The decree gave custody of the two children of the parties to plaintiff and ordered defendant to pay child support in the sum of $40 *per week*. On March 20, 1984, plaintiff filed a petition with that court seeking (1) to recover delinquent support for the period from December 29, 1975, until March 20, 1984; (2) to modify the decree to obtain additional support; and (3) to modify the decree to obtain college expenses for the older child of the parties. After a hearing, the court entered an order on July 10, 1984, (1) denying the claim for delinquent payments; (2) increasing the support to $200 *per month*; and (3) reserving the question of college expenses. On August 22, 1985, the court directed defendant to pay $1,000 per year for college expenses and also to pay medical and dental but not optical expenses for the children.

Plaintiff has appealed contending that the court erred (1) in de-

nying relief for delinquent payments; (2) in granting an increase of only $6.15 *per week* in support payments; and (3) in ordering that the increase begin on August 10, 1984, the date of the order, rather than making the increase retroactive to March 20, 1984, the date the petition requesting the increase was filed. Defendant has cross-appealed maintaining that the court erred in requiring defendant to pay education, medical and dental expenses, and in modifying the amount of child support to be paid. We affirm in part, reverse in part, and remand with directions.

The evidence indicated that of the support payments originally ordered, approximately $15,000 had not been paid as of the filing of the instant petition on March 20, 1984. No court order had been entered in the cause relieving defendant of his responsibility. However, pursuant to a criminal nonsupport proceeding initiated by plaintiff, the evidence indicated that in June 1977 defendant had agreed to restrict his visitation to times when written consent was given by plaintiff, and plaintiff agreed to drop the proceeding. Plaintiff admitted in her testimony at the hearing on her March 1984 petition that her understanding of the agreement was that she would get no future support, but that she was not giving up her right to past support. The trial court found that defendant had relied on plaintiff's promise to forego support payments "to his detriment when he relinquished his right to exercise unlimited visitation with his children." The trial court's designation of defendant's visitation rights as unlimited was not completely accurate, because his right at that time was merely to have "reasonable" visitation.

The districts of the appellate court are split on the propriety of foreclosing a parent from recovering past-due child support when the other parent has failed to make payments over an extended period in reliance upon an agreement between the parents whereby an exoneration for nonpayment was tied to a forbearance from the exercise of visitation rights. In *Bartlett v. Bartlett* (1979), 70 Ill. App. 3d 661, 389 N.E.2d 15, the Third District upheld the existence of such an agreement as a partial basis for estopping the mother from recovering past-due payments from the father. The court also held that the father was responsible for making payments in the future. In *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 393 N.E.2d 1256, the agreement in issue was one approved by the court and purported to permit the father to not make previously ordered support payments if the custodial mother refused him the previously ordered visitation. The appellate court held that even though the agreement had circuit court approval, it would not defeat the right of the mother for un-

paid support accruing during 2½ years while she had refused the father visitation. The opinion treated the issue as one where the father merely relied on the agreement as a binding release. The appellate court deemed the agreement to be contrary to public policy.

■■ We recognize that a parent cannot bargain away his or her obligation of child support. In *Leland v. Brower* (1963), 28 Ill. 2d 598, 192 N.E.2d 831, the decree entered in Ohio incorporated an agreement wherein the defendant relinquished certain real estate and the plaintiff promised to provide the entire support of the children for a period of three years. The agreement also recited that by reason of severe business reversals, the defendant had no assets of any value and the purpose of the arrangement was to enable him to make a fresh start. Approximately one year later, plaintiff filed a petition alleging that the defendant was now able to provide support. There was no allegation or proof that she was unable to comply with her agreement to provide support or that the children were not being supported. The court stated:

> "In Illinois the obligation of a father to support his child begins when the child is born and continues during the minority of the child. (*Kelley v. Kelley*, 317 Ill. 104.) This obligation is not affected by a decree granting a divorce and awarding custody to the wife, nor can he be relieved of it by agreement with her." *Leland v. Brower* (1963), 28 Ill. 2d 598, 600, 192 N.E.2d 831, 832.

The consideration given by the wife in this case is the giving up of a legal obligation on the husband's part to pay support. This just cannot be approved.

Also, in *Nelson v. Nelson* (1950), 340 Ill. App. 463, 468, 92 N.E.2d 534, 536, the court stated, "[t]he duty of a parent to support his minor child arises out of a natural relationship" and the claim for support of the children is one which transcends any contractual obligation. As stated in *Huckaby*:

> "So it is in this case that the public policy of this State imposes a duty upon a father to support his child that cannot be bargained away. The agreement·between the plaintiff and the defendant to suspend support payments for failure of the wife to afford visitation in the summer of 1975, even though incorporated in an order of court, does not and cannot either transcend or suspend the legally imposed obligation to support minor children." (*Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 199, 393 N.E.2d 1256, 1260.)

The *Huckaby* court found that the agreement and the court's order

which incorporated the agreement were void as against public policy and of no legal effect.

The determination of child support is the court's responsibility and not the parties. To allow or condone the agreement even if made to be binding upon the parties and upon the court would promote such agreements, and the resulting effects will be burdensome upon the custodians as well as the State of Illinois.

Parties to divorce or dissolution matters should not be allowed to contract away their responsibilities especially as they deal with child support. There may very well be many custodians who would bargain away their right to support in return for an agreement not to visit the children. Additionally, section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)) provides in part, "support may be modified only as to installments accruing subsequent to the filing of the motion for modification."

Child support as a part of a dissolution proceeding is the subject of negotiation in many cases. Its practice is a necessary part of these types of proceedings, but it always must be kept in mind that it is the court's responsibility and not the parties to determine the adequacy of child support and the amount of child support.

■ The defendant argues that he relied on the agreement to his detriment in that he did not visit with the children after the June 1977 agreement. It is basically offensive to consider a parent's forbearance from visitation to be a detrimental reliance upon a promise by the spouse entitled to support payments to waive those payments. We find such a forbearance offensive. It is selfish on the part of the support payor and selfish upon the part of the support payee. The children suffer, and this is added reason why it should be against the public policy of this State.

■ With respect to the claim of estoppel, the supreme court in *Dill v. Widman* (1952), 413 Ill. 448, 455-56, 109 N.E.2d 765, 769, stated:

> "The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts. Fraud is a necessary element but it is not essential that there be a fraudulent intent. It is sufficient if a fraudulent effect would follow upon

allowing a party to set up a claim inconsistent with his former declarations."

*Dill*, decided by the supreme court in 1952, was cited in *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12. In *Finley*, the decree for divorce was entered on October 4, 1965. The defendant decreased his support in 1966, again some four years later, and again on October 31, 1975, as each of four children reached the majority. At the time the petition for arrearage was filed on December 8, 1977, only one child was still a minor. The supreme court found that the husband had failed to establish that he relied on any acts or omissions of his wife and that she was not equitably estopped from bringing suit. In the instant case, the only act or omission on the part of the wife that would be considered in estoppel is the statement by the wife that she would not pursue the support if he would not visit the children. There was no showing of any detriment to the husband, other than the nonpayment of support for the period involved. In order to find estoppel, we must give effect to the agreement between the parties. There was no fraud, no misrepresentation of the facts by the wife, no knowledge on the part of the wife that the representations were untrue and no showing of prejudice to the husband. (*Jones v. Meade* (1984), 126 Ill. App. 3d 897, 467 N.E.2d 657.) A spouse is not presumed to be prejudiced because he is forced to pay the accumulated support in a lump sum. 126 Ill. App. 3d 897, 467 N.E.2d 657.

As this court stated in *Jones*:

"Past due installments of child support are a vested right, and the court has no authority to modify them either as to amount or time of payment. [Citations.]

* * *

*** Silence on the part of the custodial spouse, in the face of unilateral reduction in child support payments by a spouse, does not itself create an equitable estoppel." *Jones v. Meade* (1984), 126 Ill. App. 3d 897, 902-03, 467 N.E.2d 657, 661.

Additionally, the husband should be given little sympathy because it appears from the record that he earnestly pursued his rights to visitation by petition and otherwise until an agreement was made that he would no longer support the children. His good faith, although not a concern of this court, is certainly lacking.

Equitable estoppel in some instances may be appropriate in support matters. (*Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 484 N.E.2d 482.) It is neither appropriate nor applicable here. For the same reasons *laches* is not a defense. As this court stated in *Jones*:

"A defendant must show prejudice or hardship and must be in-

jured by the delay for the defense of *laches* to apply. [Citations.]

\* \* \*

"\* \* \* A spouse is not injured because he is forced to pay the accumulated support in one lump sum as opposed to weekly payments as ordered." *Jones v. Meade* (1984), 126 Ill. App. 3d 897, 903, 467 N.E.2d 657, 661.

■ We next consider the trial court's order modifying the decree to provide additional support. It is first noted that a previous appeal filed July 27, 1984, was dismissed by this court on May 2, 1985. (*Blisset v. Blisset* (1985), 135 Ill. App. 3d 1166 (order under Supreme Court Rule 23).) At the subsequent hearing, August 22, 1985, the trial court did not hear evidence on the matter of support.

The trial court entered an order July 10, 1984, setting the child-support obligation of the husband at $100 per month per child payable in two equal monthly installments effective August 1, 1984. This order reinstated the defendant's obligation to pay support which had been set at the time of the entry of the decree in 1975 at $40 per week. The record shows that the defendant's income at the time the original dissolution decree was entered was a maximum of $9,000 per year. The record shows his income in 1983 was $52,671.26. His income in 1984 was $52,404.00. The evidence of the 1984 earnings was not available to the trial judge who set the order for support effective August 1, 1984. The evidence presented shows that the defendant had remarried, fathered two children by the second marriage and also adopted a child of his present wife. An approximate-7½%-of-net-income support order is not appropriate. The trial court is authorized to consider the elements listed in section 505 (Ill. Rev. Stat. 1983, ch, 40, par. 505) and other circumstances of the husband, *i.e.*, remarriage and other children. The husband should not be penalized in setting a support figure because he works overtime. Consideration should also be given that the husband, for tax purposes, does not declare all of his exemptions which then permits him to receive a substantial refund at the end of the year. Considering the evidence presented, the court's order on modification was an abuse of discretion.

■ The decision of whether to make a support modification retroactive to the date of the petition requesting the same is a matter of discretion with the trial court. (*Harner v. Harner* (1982), 105 Ill. App. 3d 430, 434 N.E.2d 465.) We find no breach of discretion in the order of the trial court refusing to make the modification order retroactive here.

■ Absent a showing that the conduct of the opposing party is

wilful and wanton or that the spouse seeking fees is financially unable to pay them, the court has great discretion in ruling upon a request for such fees in a matrimonial case. (*Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 484 N.E.2d 482.) Plaintiff put on no evidence as to what her fees were nor was there a showing that she could not pay the fees. No showing was made that the defendant's conduct was wilful and wanton. His failure to pay support from June 3, 1977, to the time of filing the petition was pursuant to an agreement which he though was binding between himself and the wife. The purpose of that agreement was such that the plaintiff agreed not to have the defendant held in contempt of court for past failure to make support payments even though he still owed some payments. That agreement would preclude a determination that the decedent's past failure to pay the amount to be determined on a hearing was wilful and wanton. The court did not err in denying attorney fees to the plaintiff.

■ Although there was evidence that plaintiff had told defendant prior to the divorce she did not expect defendant to pay for college expenses for the children, the court's requirement that defendant pay for those expenses was not error. The evidence shows he was able to pay and make the additional payment of $1,000 per year. We are unaware of a case prohibiting the trial court from ordering a payment for a child's college education expenses merely on the basis that the custodial spouse had indicated at the time of the divorce that such payments would not be necessary.

■ Similarly, the requirement that the defendant pay medical and dental but not optical expenses for the children was not a breach of discretion. In summary, (1) the agreement entered into by the parties wherein the husband gave up visitation and the wife gave up support is not to be enforced; (2) the wife is entitled to recover delinquent support from December 29, 1975, to March 20, 1984; (3) child support set at $200 per month (about 7% of net income) was an abuse of discretion; (4) the order for partial college expenses and medical and dental expenses as set by the trial court is not error; and (5) there is no finding of wilfulness and the court's denial of attorney fees is approved. This cause is remanded for determination of the amount of child support due, and for further hearing on the wife's petition for increased support. In all other matters, the orders of the trial court are affirmed.

Affirmed in part, reversed in part, and remanded with directions.

MORTHLAND, J., concurs.

JUSTICE GREEN, concurring in part and dissenting in part:
I concur in the ruling of the majority in every respect except that I would deny plaintiff back support from the date of the June 1977 agreement until she terminated her acquiescence in that agreement and initiated the instant proceedings in March 1984. I dissent from the ruling of the majority and would uphold the finding of the circuit court that plaintiff was estopped from claiming back support to that extent.

Although the language in some of the cases cited by the majority is broad, the section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)) purports to prohibit court modification of past-due support payments accruing prior to a petition to modify, the majority recognizes that a parent may be estopped from collecting such past-due payments. In *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12, cited by the majority, the supreme court recognized the existence of such an estoppel rule. The situation in regard to past-due support payments must be distinguished from future support payments. Under section 510(a), a court may modify prior provision for support payments on a showing of a material change in circumstances and good cause, but prior conduct of the recipient parent cannot work an estoppel binding on that parent in the future. That was the rule set forth in *Leland v. Brower* (1963), 28 Ill. 2d 598, 192 N.E.2d 831.

In *Leland,* a divorcing father was ordered by the court to make support payments. Subsequently, the mother and father agreed that he could cease making the payments and that she would support the children. Still later, the mother filed a petition requesting that the father be required to *resume* payments. The trial court ordered him to do so. The supreme court ultimately held that the father should not have been required to make payments because he was not able to do so. The language quoted by the majority was stated in the context of explaining that the prior agreement would have prevented the court from ordering future payments.

Agreements between former spouses that the obligor spouse need not make ordered support payments together with reliance thereon by that former spouse have been held to be a sufficient partial basis for estoppel as to arrearages not only in *Bartlett v. Bartlett* (1979), 70 Ill. App. 3d 661, 389 N.E.2d 15, but also in the cases of *In re Marriage of Strand* (1980), 86 Ill. App. 3d 827, 408 N.E.2d 415, and *Wolfe v. Wolfe* (1940), 303 Ill. App. 188, 24 N.E.2d 871, and *dictum*

in other cases have approved such a ruling. In *Elliott v. Elliott* (1985), 137 Ill. App. 3d 277, 279, 484 N.E.2d 482, 483-84, also cited by the majority, this court stated that in a "proper case" the court will "give effect to an agreement between the parties to reduce child support payments or will apply the doctrine of equitable estoppel."

The general tenor of the cases approving an estoppel based on an agreement is that for such an estoppel to occur: (1) the obligor former spouse must have relied on the agreement to his detriment; (2) the recipient spouse must have acquiesced in the nonpayment of support over an extended period; and (3) most importantly, the welfare of the child or children to be supported must not be prejudiced thereby. Although not mentioned in those cases, another requirement for an estoppel would be the requirement that no governmental entity has a subrogation right because of support it has been giving to the benefit of the children while the court-ordered support was not being paid. None of the cases have required that the spouse against whom the estoppel operates be guilty of fraud or of any intent at the time of the agreement not to follow the agreement.

Here, the majority does not dispute that the evidence was sufficient for the court to have found that (1) in June of 1977, plaintiff agreed that defendant need pay no more support; (2) defendant agreed that he would not visit the children; (3) he did not do so; (4) defendant acted in reliance on the agreement; and (5) defendant was prejudiced by not seeing the children. The majority does not consider the foregoing of visitation to be a type of prejudice that should be recognized. I contend that defendant suffered the further prejudice that was inherent in conducting his affairs from 1977 until 1984 under the assumption that he did not need to be saving money to eventually make the back support payments. I recognize that in *Jones v. Meade* (1984), 126 Ill. App. 3d 897, 467 N.E.2d 657, this court indicated that an obligor former spouse is not damaged by having to pay overdue payments in a lump sum. However, there, this court stated that the obligor former spouse had not been misled into reasonably believing that he would not have to make the payments. Significantly, in *Jones*, this court made it very clear that the trial court had found that there was no agreement that the obligor former spouse was not required to make the payments.

The record gives no indication that plaintiff had been receiving any public aid from a governmental unit. The question of whether the rights of the children were prejudiced by the trial court's allowance of estoppel is a substantial question which I will discuss later. I conclude that those rights will not be prejudiced upon a court order

for proper future support payments.

The cases cited by the majority holding that a former spouse, under court order to make support payments, cannot defend against an action for past-due installments on the basis that the parties agreed to suspension or reduction of the payments are *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 393 N.E.2d 1256, and *Nelson v. Nelson* (1950), 340 Ill. App. 463, 92 N.E.2d 534. Both involve agreements requiring the obligor former spouse to forego visitation but in neither case does the opinion discuss a theory of estoppel. The *Nelson* court indicated that a claim for back support cannot be defended on the basis of an agreement for suspension of the payments. If that be taken as authority that an estoppel can never arise from an agreement of the parties to suspend payments, then the decision is contrary to the decisions in *Bartlett, Strand,* and *Wolfe,* and *dictum* of this court in *Elliott,* and indications of this court in *Jones* that an estoppel could arise from such an agreement.

The *Huckaby* court was concerned with a problem which is closely related to what I consider to be the most serious issue in this case. That issue is whether estoppel can arise in cases where the detriment to the obligor spouse is a forbearance from the exercise of visitation rights. In *Huckaby,* the parties had been divorced in 1973, with the father ordered to pay child support of $15 per child per week. The father had been unable to make payments for a while because of an injury. Dispute arose over the father's ability to pay and whether the custodial mother was permitting reasonable visitation. The parties stipulated to an order whereby the father's duty to pay support was to terminate until further order if the mother failed to allow the father visitation. In 1978, the mother petitioned for back support. The trial court denied back support based upon the stipulated order. On appeal, the Fifth District, in a split decision, held that the stipulated order was void as against public policy.

While the *Huckaby* court indicated that any agreement to absolve a parent from a support obligation was invalid, it also was concerned with the analogy between the situation there and the situation when a divorced spouse obligated to make support payments seeks to justify nonpayment on the basis that proper visitation has not been provided. That is not a valid defense. (*Slavis v. Slavis* (1973), 12 Ill. App. 3d 467, 299 N.E.2d 413.) In *Huckaby,* the stipulated order purported to give the father that defense.

The question thus arises as to whether the public policy behind the *Slavis* ruling also prevents an estoppel based upon reliance on an agreement that support may be terminated in exchange for a prom-

ise not to visit. I conclude that it does not. To permit withholding of support because of visitation violations by the custodial parent would create an invitation to continued dispute and result in a parent depriving his children in order to punish or force compliance from the custodial spouse. On the other hand, the estoppel rule is applied only after there has been an acquiescence in the agreement for a substantial time. Furthermore, estoppel can only be applied when its application is not prejudicial to the children.

When all children are emancipated by the time back support payments are sought, the children are not prejudiced by application of an estoppel. Even when that is not the case, if, as usually ordered, the back support is ordered paid in a lump sum, there is little assurance that the money will be used for the children. Often the parent making the payment has to borrow to do so. This impairs his ability to make future support payments. Ordinarily, the best interests of children are served by requiring the parent to make adequate future payments while not impairing his ability to do so. The estoppel found by the trial court to exist here will not be prejudicial to the interests of the children of the parties as long as defendant is required to make the additional support payments in the future as required by the terms of the majority opinion. Although the question is a close one, under the circumstances shown, I would hold that an estoppel may be based on the type of agreement here even though most of the detrimental reliance by the noncustodial former spouse is his refraining from exercise of his visitation rights.

As I have stated, I would not estop plaintiff from obtaining child support which had accrued up to the time of the agreement in June of 1977. The proof is not clear that plaintiff agreed that those past-due amounts would be forgiven. Rather, she admitted she understood that subsequent payments would not be made. To this extent, the denial of estoppel was proper.