Charles E. Doose, Plaintiff in Error, v. Adela E. Doose, Defendant in Error.

Gen. No. 21,219.

1. DIVORCE, § 47*—*when evidence sufficient to show extreme and repeated cruelty towards wife.* On a bill by a wife for divorce, evidence *held* sufficient to sustain a finding that defendant was guilty of extreme and repeated cruelty.

2. DIVORCE, § 16*—*when condonation of conduct of husband no bar to divorce.* Where it appeared that the wife in a suit for divorce lived with her husband for three weeks after the commission of his last act of physical violence upon her but thereafter went to a hospital and lived continuously separate and apart from him, that two months after she went to the hospital her husband filed the bill for divorce, making charges against her of extreme and repeated cruelty towards him, which, if untrue, probably wounded her greatly, and where it further appeared that on the trial he made no attempt to prove such charges and did not dispute her testimony as to his cruelty; *held* that even though her cohabitation with him during such three weeks amounted to a condonation of his cruelty, his subsequent conduct, after she had gone to the hospital, did not show "good usage and conjugal kindness," and that her condonation, if any there was, did not constitute a bar to her obtaining an absolute divorce.

3. DIVORCE, § 16*—*what constitutes condonation.* Condonation is forgiveness upon condition that the injury shall not be repeated.

4. DIVORCE, § 16*—*when condoned offense revived.* Any misconduct, not necessarily of the same character as that condoned, such as accusations against the woman, revive the condoned offense.

5. DIVORCE, § 16*—*what is effect of condonation by wife.* Con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

donation is not so strict a bar against a wife as against a husband, inasmuch as she may find it difficult to quit the common domicile and often submits through necessity.

6. DIVORCE, § 16*—*what does not constitute condonation.* Forbearance of the wife to abandon her husband and sue does not weaken her title to relief.

7. DIVORCE, § 16*—*when condonation not pleaded as a defense no bar to right of wife to divorce.* Where the husband, who is cross-defendant in a divorce suit, did not plead condonation as a defense and the point was not urged or even mentioned on the hearing, such condonation will not in the exercise of the court's discretion prevent the wife from obtaining a divorce.

8. DIVORCE, § 18*—*what does not constitute collusion to obtain divorce.* Where an arrangement exists between the parties as to a division of the property in the event a decree of divorce should be granted, it cannot be inferred from the fact of the existence of such an arrangement as to *property* that there was collusion to obtain a *divorce.*

Error to the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed March 28, 1916.

## Statement of the Case.

On January 29, 1914, Charles E. Doose, complainant, filed his bill for divorce in the Superior Court of Cook county against his wife, Adela E. Doose, on the ground of extreme and repeated cruelty. The wife filed an answer in which she denied the charges of cruelty, and alleged that on November 30, 1913, she entered the Evanston Hospital for the purpose of having an operation performed, and that while she was absent from home complainant removed all of the furniture therefrom and rented the house and has ever since refused to live with her or support her. On April 8, 1914, the wife filed a cross-bill for divorce, alleging her marriage to complainant in November, 1894, and her residence in Illinois continuously since that date; that she had lived and cohabited with complainant as his wife "until on or about December 1, 1913"; that he had been guilty of extreme and repeated cruelty towards her; that on one occasion during the month of April, 1912,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

without any provocation, he became enraged and seized her by the throat and choked her, and that about October 29, 1913, he again choked her and otherwise maltreated her, and that on other occasions, while in anger, he had choked, struck and beaten her; that she was now living separate and apart from her husband in rooms which she had rented near their former residence in Wilmette, Illinois; and that there was born of the marriage a son, Carl W. Doose, who was residing with her. On the same day complainant filed an answer to said cross-bill in which he admitted the marriage in November, 1894, cross-complainant's continuous residence in Illinois since that time, and that the parties had lived and cohabited together as husband and wife from that time until on or about December 1, 1913. He denied the charges of cruelty, but admitted that cross-complainant was living separate and apart from him.

On April 10, 1914, the cause came on for hearing in open court before the chancellor. Both parties were represented by counsel. The complainant did not introduce any evidence in support of his bill. In support of the allegations of the cross-bill the cross-complainant and Carl W. Doose testified, but they were not cross-examined. The cross-complainant testified, in substance, that she was married to complainant on November 11, 1894; that she had been a resident of Wilmette, Illinois, for the past eight years; that Carl W. Doose was her son, born of said marriage, and that he was eighteen years of age; that she continued to live with complainant as his wife from the time of the marriage "up to the time I went to the hospital, December 1, 1913"; that for the past two years, and over, complainant had been cruel and abusive towards her; that in the month of April about two years ago complainant, while in anger, grabbed her by the throat and choked her and hurt her; that her son was present at the time; that on three subsequent occasions complainant was guilty of acts of cruelty and physical violence

towards her; that the last of such acts was "about three weeks before I went to the hospital"; that on that occasion "he choked me and started to abuse me, and when I screamed he put a pillow over my head so that no one could hear"; that while he was so holding the pillow her son, Carl, came into the room; and that complainant frequently used profane language, particularly during the last two years. Carl W. Doose testified to seeing his father, while in a fit of anger, choke his mother about two years previously, and also on the last occasion to seeing his mother lying down and his father holding a pillow over her head. During the hearing counsel for cross-complainant stated, in substance, that he was not going to introduce any testimony as to property rights; that an agreement had been made with counsel for complainant (present in court) as to the distribution of the property, provided, of course, that a decree of divorce should be granted; that a deed of certain property had been placed in escrow with a certain Chicago bank and that after the decree was entered that would settle the matter. The cross-complainant further testified that she understood all the details of the agreement as to the division of the property and that she was satisfied with the arrangement.

On April 15, 1914, the court entered a decree, in which it was adjudged that complainant's bill be dismissed for want of equity and that complainant pay all the costs of the litigation; that under the cross-bill the bonds of matrimony theretofore existing between the parties be dissolved, and that each of the parties be barred from all dower and homestead in any real estate owned or hereafter acquired by the other. The court found in the decree that both parties had agreed in open court to an immediate hearing and were present on the hearing; that since their marriage they had lived together as husband and wife until on or about December 1, 1913, when cross-complainant left

complainant, and that since said time they have not lived together as husband and wife; that complainant had been guilty of extreme and repeated cruelty towards cross-complainant; and that the parties had agreed to a division of property as and for a complete settlement of the rights either might have in the property of the other, whether for alimony, maintenance, dower or homestead. The decree, as entered bears the "O. K." of the respective solicitors of the parties. The transcript of the record further discloses that on the same day, April 15, 1914, on motion of the solicitor for complainant or cross-defendant, it appearing that all costs had been paid, the court ordered the clerk of the court "to satisfy of record the decree of divorce entered this day." The present writ of error was sued out of this court by said Charles E. Doose on February 2, 1915.

BENNISON F. BARTEL, for plaintiff in error, did not represent plaintiff in error below.

CHURCH, SHEPARD & DAY, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

The errors assigned may be summarized as follows: That the court erred in entering the decree on the cross-bill (1) because the evidence of the alleged acts of extreme and repeated cruelty on the part of cross-defendant towards cross-complainant is not sufficient to warrant a decree of divorce; and (2) because, even if sufficient, it appears from the allegations of the cross-bill and from the testimony of cross-complainant that she had condoned said acts.

As to the first point we are of the opinion that the evidence of extreme and repeated cruelty on the part of cross-defendant is sufficient to warrant the decree.

Regarding the second point, counsel's argument, as

we understand it, is, that as it appears from the testimony of cross-complainant that the last act of cruelty complained of occurred about *three weeks before* December 1, 1913, on which date she went to a hospital, and as it further appears from her testimony that she continued to live with cross-defendant as his wife until December 1, 1913, the acts of cruelty were condoned. Under the facts and circumstances of this case we do not think that she is barred from obtaining the relief granted by the decree.

"Condonation is defined in the books as forgiveness, *upon condition* the injury shall not be repeated, and is dependent upon future *good usage* and *conjugal kindness.*" (*Farnham v. Farnham*, 73 Ill. 497, 500.) "The authorities hold that condonation is not so strict a bar against a wife as against a husband, inasmuch as she may find it difficult to quit the common domicile, and often submits through necessity. Hence, condonation on the part of the wife is not pressed with the same vigor as condonation on the part of the husband." (*Duberstein v. Duberstein*, 171 Ill. 133, 136.) "Forbearance to abandon him and sue, does not weaken her title to relief." (*Harrison v. Harrison*, 20 Ala. 629, 646.) In *Phillips v. Phillips*, 1 Ill. App. 245, 249, it is held that the two offenses of adultery and extreme and repeated cruelty are essentially different in their nature, and that the same consideration, as respects condonation, cannot be equally applicable to both. In 9 Ruling Case Law, p. 384, it is stated: "To constitute a revival of the condoned offense the offending spouse need not be guilty of the same character of offense as that condoned; *any misconduct* is sufficient which indicates that the condonation was not accepted in good faith and upon the reasonable conditions implied." (See *Langdon v. Langdon*, 25 Vt. 678, 679.) In the *Farnham* case, *supra*, a decree for divorce was granted the wife on the ground of extreme and repeated cruelty. On appeal by the husband it was contended

that the cruelty had been condoned. Our Supreme Court, in affirming the decree, said (p. 500) : "No acts of personal violence are proven subsequent to the alleged condonation, but there is evidence of abusive treatment by the use of opprobrious epithets.    *    * ·  * Cruel treatment does not always consist of actual violence.    There are words of false accusation, that inflict deeper anguish than physical injuries to the person—more enduring and lacerating to the wounded spirit of a gentle woman, than actual violence to the person, though severe." (See also, *Sharp v. Sharp,* 116 Ill. 509; *Robbins v. Robbins,* 100 Mass. 150.) In the present case the record discloses that the last act of physical violence committed by cross-defendant on the person of his wife was committed three weeks before December 1, 1913; that during the three weeks subsequent to the commission of said act she continued to live with him; that on December 1, 1913, she went to a hospital and did not afterwards return to him but continued to live separate and apart from him; that within two months after she went to the hospital he filed a bill for divorce against her in the Superior Court, in which he publicly charged her with serious acts of extreme and repeated cruelty towards him, which charges, if untrue, probably wounded her deeply; and that when the cause was called for trial, and after her cross-bill had been filed, he made no attempt to prove his charges against her and did not dispute her testimony as to his cruelty. If his repeated acts of cruelty were condoned by her for the reason urged, we are of the opinion that his conduct towards her, so far as disclosed, subsequent to her going to the hospital, does not show "good usage and conjugal kindness," and that her condonation, if any there was, is no bar to her obtaining the relief of an absolute divorce. Furthermore, the cross-defendant in his answer to the cross-bill of his wife did not plead the alleged condonation as a defense, and the point was not urged or even mentioned on the hearing.

In 9 Ruling Case Law, p. 386, it is stated: "Condonation is an affirmative defense and like other affirmative defenses must be specially pleaded or insisted upon in the answer as a defense.   *   *   *   Though condonation is not specially pleaded or relied on as a defense, the court may in its discretion refuse to grant a divorce, where it appears from the proofs, properly taken, that the injured party, with a full knowledge of all the facts, has actually forgiven the injury, which has not been revived by subsequent misconduct. *   *   *   The court should not, it would seem, exercise its discretion in this regard in order to deprive a much suffering wife of a divorce." (See also, *Watkinson v. Watkinson,* 68 N. J. Eq. 632, 638; *Smith v. Smith,* 4 Paige (N. Y.), 432, 434; *Hoffmire v. Hoffmire,* 7 Paige (N. Y.), 60).

It is also urged that the decree should be reversed because it appears that an arrangement existed between the parties as to a division of the property in the event a decree of divorce should be granted. We do not think that it can be inferred from the fact of the existence of such an arrangment as to *property* that there was collusion to obtain a *divorce.*

The decree of the Superior Court is affirmed.

*Affirmed.*