*In re* MARRIAGE OF EDWENA BLYTHE ROGERS, Petitioner-Appellant, and SHIRLEY ROGERS, Respondent-Appellee.—(THE CITY NATIONAL BANK OF KANKAKEE, as Conservator of the Estate of SHIRLEY ROGERS, Incompetent, Respondent-Appellee.)

Third District   No. 78-450

Opinion filed July 19, 1979.

Edward P. Drolet and Paul F. Davidson, both of Kankakee, for appellant.

Gregory A. Deck, of Kankakee, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a bench trial in the Circuit Court of Kankakee County, Edwena Rogers' petition for divorce from her husband Shirley Rogers was dismissed on the grounds of condonation.

The facts of this divorce case are unusual. In October 1977, petitioner filed for divorce from respondent on the grounds of physical cruelty. A guardian ad litem was appointed to represent respondent, who had been declared incompetent on October 31, 1966, as a result of injuries he sustained in an auto accident on June 28, 1966. The City National Bank of Kankakee, who was serving as conservator of respondent's estate, was also joined in the action.

At trial, petitioner testified she and respondent were married in 1960 and had one 13-year-old son. Petitioner said respondent was currently a resident of the Danville Veterans Hospital. Petitioner's sister, Helen Reynolds, testified she witnessed two acts of physical cruelty perpetrated by respondent on petitioner on Christmas 1965 and in April 1966. The witness said that on both occasions the respondent, without provocation, punched petitioner on the right arm, leaving her crying and severely bruised. Reynolds further stated that on each occasion respondent said he wanted a divorce. On cross-examination Reynolds testified she visited petitioner and respondent's home after the April 1966 incident and observed that petitioner was still doing the laundry, cooking, and other housework for the whole family. She said the parties were acting toward each other, "Well, like husband and wife" and "as far as she knew" they were still sleeping together. The witness "imagined" the parties went to

visit relatives together, but she could not recall them coming to her house together after the April incident.

Petitioner closed her case after Reynolds' testimony and the guardian ad litem moved to dismiss the divorce petition on the grounds that the evidence failed to establish the requisite acts of cruelty and that the defense of condonation had been raised by the testimony of Reynolds. Petitioner objected that condonation was an affirmative defense which had to be pleaded to be considered. The trial court did not agree, and it issued a memorandum opinion stating that, although two acts of extreme physical cruelty were clearly proven, the divorce would be denied on the grounds of condonation. The court noted that it had, on its own motion, taken judicial notice of certain documents in the file of respondent's conservatorship case and that those documents were being considered by the court in finding condonation. Petitioner was allowed to reopen her case to counteract the effect of any matter judicially noticed.

Helen Reynolds was recalled to the stand and testified that, as far as she knew, respondent had been in one of several hospitals continuously since the auto accident on June 28, 1966. The witness further stated that she had not personally observed petitioner doing housework for the family after the April incident of cruelty, but merely assumed petitioner had done so because the work was done. She said her previous testimony that the parties slept together and visited relatives together after the incident was also based on her assumption or guess. Respondent renewed his motion to dismiss and the court noted that the judicially noticed documents indicated petitioner and respondent had lived together after the June 1966 auto accident.

Petitioner then testified in her own behalf as to respondent's auto accident and his subsequent hospitalizations. She admitted she lived with and cared for respondent for over a year between two of his hospitalizations, but said she never forgave respondent for his acts of cruelty and only lived with and cared for him because he had nowhere else to go and she had nowhere else to go. According to petitioner, "There was no one else to do it. I didn't have any money to get somebody to do it. I had to do it cause he wasn't even capable of fixing himself a can of soup to eat for lunch." Petitioner rested, and respondent declined to present any evidence, standing instead on his previous motion to dismiss.

The trial court dismissed the divorce petition based on all the evidence, finding that condonation was established by petitioner living with respondent for two months after the last act of cruelty, serving as conservator of respondent's person, living with and caring for respondent for over a year between his hospitalizations, and failing to seek a divorce for another eight years after respondent returned to the hospital. Petitioner's motion to vacate the judgment was denied.

■■ ■ On appeal, petitioner raises several procedural and evidentiary questions, but we need not consider these questions for we have determined that the finding of condonation was not supported by the evidence in this case. We reverse.

"Condonation, in the law of divorce is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness." (*Quagliano v. Quagliano* (1968), 94 Ill. App. 2d 233, 237, 236 N.E.2d 748.)

Whether condonation is present in a particular case is a question of intent. (*Deahl v. Deahl* (1973), 13 Ill. App. 3d 150, 300 N.E.2d 497.) The burden is on the party raising the affirmative defense of condonation to prove by a preponderance of the evidence that the wronged party intended to forgive the matrimonial offenses of his spouse. (*Rasgaitis v. Rasgaitis* (1952), 347 Ill. App. 477, 107 N.E.2d 273.) The intent of the wronged party must be demonstrated by words and deeds that reflect full, free and voluntary forgiveness. *Jackson v. Jackson* (1975), 34 Ill. App. 3d 407, 339 N.E.2d 764.

■■ In the instant case petitioner testified that she never forgave respondent for his abusive conduct toward her, and there is no evidence that petitioner ever made any statements to the contrary. Thus, if condonation did exist in this case, it had to be established by petitioner's deeds and actions toward respondent. We do not believe petitioner's conduct in this case is sufficient to prove her full, free and voluntary forgiveness of respondent's misconduct.

■■■ Petitioner did continue to occupy the same house as respondent after his acts of cruelty, for two months prior to the auto accident and for over a year between two of respondent's hospitalizations. However, the sole fact that the parties lived together after the matrimonial offense does not, in and of itself, establish condonation. (*Farah v. Farah* (1975), 25 Ill. App. 3d 481, 323 N.E.2d 361.) Even the continuation of sexual relations between the parties would not be sufficient in itself to prove condonation. (*Farah; Rasgaitis.*) Continued cohabitation is a factor to be considered in determining whether a matrimonial offense has been condoned, but it is not conclusive evidence of condonation, and if the facts of the particular case indicate the cohabitation was the result of necessity, rather than forgiveness, the defense of condonation must be rejected. *Duberstein v. Duberstein* (1897), 171 Ill. 133, 136, 49 N.E. 316; *Doose v. Doose* (1916), 198 Ill. App. 387.

That necessity, rather than forgiveness, caused petitioner to live with and care for respondent between his hospitalizations, was evinced by petitioner's compelling testimony. Petitioner testified that respondent was totally incapable of caring for himself, and this conclusion was supported

by respondent's medical records and the fact he was found legally incompetent by the circuit court. Petitioner was financially unable to hire someone to provide the constant attention which respondent required. Petitioner was asked why she continued to live with respondent despite her lack of forgiveness and she answered, "Where else was I going to. Where else was he going to." We believe this evidence to be more indicative of necessity than forgiveness. The fact petitioner also served as conservator of respondent's person, and temporarily of his estate, is of little significance. Since petitioner was the person living with and caring for respondent, it was only logical that she be the one responsible for managing his affairs. Again, necessity, rather than forgiveness, appears to be the motivating factor.

■ Petitioner's continued cohabitation with respondent prior to the accident obviously cannot be justified by respondent's subsequent medical condition. However, as previously noted, mere cohabitation is not sufficient in itself to establish condonation, particularly where the wronged party is unemployed and must rely on the other party for financial support. (*Jackson; Doose.*) In the instant case petitioner's sister, Helen Reynolds, testified that when she visited the parties' home after the last incident of cruelty the petitioner and respondent acted "like husband and wife," with petitioner doing the household chores and preparing the family meals. However, the witness admitted that her impression of the relationship between the parties was based on assumption or guess, rather than personal observation. Reynolds said that during that two-month period the parties did not come to visit her together, as they had in the past. We believe this evidence establishes nothing more than mere cohabitation for a short period of time, and we do not believe it is sufficient to prove respondent's defense of condonation.

■■ Finally, we do not think petitioner's failure to seek a divorce for eight years after respondent's rehospitalization is sufficient grounds to support a finding of condonation. Although lapse of time after a matrimonial offense could be indicative of an intent to condone the offense, we do not think such an intent was indicated under the unique facts of this case. Respondent was continuously hospitalized during this period, and petitioner had no reason to fear a repetition of the acts of cruelty. There is no evidence that petitioner visited respondent after he became a resident of the Danville Veterans Hospital. Although petitioner can be faulted for a lack of diligence in pursuing her divorce, such lack of diligence under the circumstances of this case, cannot be equated with an intent on petitioner's part to fully, freely, and voluntarily forgive respondent for his past abusive conduct.

> "The essence of condonation is the recognition that problems affecting the continuance of the marriage have arisen and

notwithstanding the mistakes or misconduct which have occurred there is understanding and forgiveness sufficient to provide an appropriate basis for continuing the marriage." (*Quagliano v. Quagliano* (1968), 94 Ill. App. 2d 233, 238, 236 N.E.2d 748.)

We do not believe an understanding and forgiveness sufficient to justify the continuation of this marriage was demonstrated by a preponderance of the evidence in this case. The evidence was sufficient to prove the requisite acts of cruelty existed before the incompetency began. The divorce should have been granted.

For the foregoing reasons, the judgment of the Circuit Court of Kankakee County is reversed.

Reversed.

ALLOY, P. J., and SCOTT, J., concur.