*In re* PATERNITY OF DANA PERRY, a Minor (Geanese Perry, for the Minor, Dana Perry, Petitioner-Appellant; Webster Clayton III, Respondent-Appellee).

First District (2nd Division) No. 1—93—1615

Opinion filed March 31, 1994.

Lonathan D. Hurse, of Chicago, for appellant.

Jane F. Fields, of Chicago, and Milos, Schaps & Grotta, of Palos Park (Thomas E. Grotta, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:
Petitioner, Geanese Perry, appeals from an agreed order for child support. The sole issue presented here, whether a circuit court must comply with section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505(a) (West 1992) (section 505(a))) when entering an agreed order for child support, is one of first impression.

On February 24, 1986, a court determined that respondent, Dr. Webster Clayton III, is the father of petitioner's daughter, born June 30, 1981, and ordered respondent to pay $175 per month for child support.

On May 27, 1992, petitioner filed a petition for an increase in child support based upon the changed circumstances of the parties and the increased needs of the child. The court heard testimony regarding the parties' respective incomes and expenses on October 14, November 4, and December 17, 1992. Respondent testified that he is a practicing anesthesiologist, employed since 1989 with Blackhawk Anesthesiologists in Waterloo, Iowa. His gross income was $21,587 per month in 1992. Before that, his gross annual income was approximately as follows: $298,688 in 1991; $132,584 in 1990; and $60,000 in 1989. Prior to 1989, respondent had been in residency training, earning $24,000 annually. When respondent completed his residency in 1989, he began paying $500 per month for child support pursuant to an oral agreement between the parties.

Respondent is married with a six-year-old son. His wife is a school teacher who earns $40,000 annually. The monthly living expenses for respondent and his family are $6,563. His assets include over $80,000, which is invested in stocks and bonds, a money purchase plan, and a retirement fund. Respondent has a third child outside of the marriage for whom he pays $150 per month in support pursuant to a court order.

Petitioner testified that she is a school teacher, employed since 1976 with the Board of Education, City of Chicago, earning a base salary of $41,000 per year. Every two years she works overtime and her income increases to $50,000. Petitioner listed her total monthly expenses as $5,120. She listed her daughter's current monthly expenses as $2,938, a substantial increase from 1986 when the daughter's expenses were $656 per month. Petitioner owns a two-unit apartment building in which she and her daughter reside. She has no other assets, and lists personal debts amounting to $23,600.

On December 17, 1992, the parties, through their attorneys, advised the circuit court that they had agreed on a settlement of the child support issue. Accordingly, the court entered an agreed order which provides in relevant part:

"This matter having come on for hearing pursuant to Geanese Perry's Petition for Increase in Child Support, the court having commenced trial in this cause, and the parties having deemed it in the best interest of the parties and their child, the court being duly advised in the premises, by agreement of the parties,

IT IS ORDERED that

(1) Webster Clayton III shall pay to Genease Perry the sum of $1,200 per month commencing January 1, 1993 as and for child support."

Both petitioner and respondent signed the agreed order.

Subsequently, the court denied petitioner's *pro se* motion to vacate the agreed order on grounds that the child support award was contrary to the "prescribed law" requiring respondent to pay 20% of his income as child support. The court also denied petitioner's motion for reconsideration of the child support award, which claimed the support order failed to comply with section 505(a) of the Act. Petitioner appeals.

I

Petitioner contends that the circuit court abused its discretion by entering the agreed order for child support in an amount substantially less than provided for by statutory guidelines, without making express findings and stating its reasons for allowing the deviation pursuant to section 505(a). Using her own computations, she avers that the award of $1,200 per month is only 6% to 9% of respondent's net income and, therefore, does not comply with section 505(a)'s requirement that 20% of the supporting party's net income be paid for child support of one child, unless the court expresses a reason for deviating from the guidelines. The issue presented here is whether the circuit court must comply with the "express findings for deviation" provisions of section 505(a) in entering an agreed order for child support.

Modification of child support payments rests within the sound discretion of the circuit court, and its decision will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229.) Section 510(a) of the Act covers modifications of child support payments, providing that support "may be modified *** only upon a showing of a substantial change of circumstances." (750 ILCS 5/510(a) (West 1992).) The burden of demonstrating such a change is on the party seeking modification. (*In re Marriage of Lyons* (1987), 155 Ill. App. 3d 300, 304-05, 508 N.E.2d 458.) Once a determination is made that modification is warranted, the court should consider the factors set forth in section 505(a). *People ex rel. Hines v. Hines* (1992), 236 Ill. App. 3d 739, 745, 602 N.E.2d 902.

Section 505(a)(1) of the Act states that "[t]he Court shall determine the minimum amount of support" by using a set of guidelines: these guidelines provide that for one child, the supporting party is to contribute 20% of his or her net income. (750 ILCS

5/505(a)(1) (West 1992) (section 505(a)(1)).) Section 505(a)(2) of the Act further provides that the guidelines "shall be applied in each case unless the court, after considering evidence presented on all relevant factors,[1] finds a reason for deviating from the guidelines." (750 ILCS 5/505(a)(2) (West 1992) (section 505(a)(2)).) Accordingly, if a court orders a lower award than provided for by the guidelines, the court must consider all the relevant factors set forth in section 505(a)(2). (*In re Marriage of Harding* (1989), 189 Ill. App. 3d 663, 681, 545 N.E.2d 459.) In addition, section 505(a)(2) mandates: "If the court deviates from the guidelines, *** it shall make express findings as to its reason for doing so." (750 ILCS 5/505(a)(2) (West 1992).) Courts have consistently upheld this mandate. (*In re Marriage of DeBow* (1992), 236 Ill. App. 3d 1038, 1053, 602 N.E.2d 984; *In re Marriage of Morgan* (1991), 219 Ill. App. 3d 973, 974, 579 N.E.2d 1214; *In re Marriage of Wright* (1991), 212 Ill. App. 3d 392, 398-99, 571 N.E.2d 197; *Harding*, 189 Ill. App. 3d at 681.) These same rules apply where the child's parents never married, as here. See 750 ILCS 45/3, 14 (West 1992); *People ex rel. Graham v. Adams* (1993), 239 Ill. App. 3d 643, 644-46, 608 N.E.2d 614.

Respondent accurately points out that all the aforementioned cases involved court *determinations* of child support matters. None involved a settlement agreement between the parties, sanctioned by court approval, as in the present case. Petitioner insists that section 505(a)'s requirements that a court consider all the factors and make express findings apply "even if the deviation results from an agreement between the parents" rather than from court decision, citing *Blisset v. Blisset* (1986), 144 Ill. App. 3d 1088, 495 N.E.2d 608, *aff'd in part & rev'd in part on other grounds* (1988), 123 Ill. 2d 161, 526 N.E.2d 125, and *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 393 N.E.2d 1256. She claims these cases stand for the proposition that it is solely the court's responsibility, and not the parents', to determine child support.

Both the appellate and supreme courts in *Blisset* found unenforceable an agreement between parents to release a child support obligation in exchange for a surrender of visitation rights. (*Blisset v. Blisset* (1988), 123 Ill. 2d 161, 168, 526 N.E.2d 125; *Blisset*, 144 Ill. App. 3d at 1091-92.) The supreme court stated:

---

[1]Relevant factors include, but are not limited to, the following: the financial resources of the child; the financial resources and needs of the custodial parent; the standard of living the child would have enjoyed had the marriage not been dissolved; the physical and emotional condition of the child, and the child's educational needs; and the financial resources and needs of the noncustodial parent. 750 ILCS 5/505(a)(2) (West 1992).

"The modification of a child support obligation is a judicial function, administered exclusively by the court as a matter of discretion. [Citation.] The court is obligated in marital dissolution proceedings to protect the best interests of the children involved. [Citations.] Moreover, although property disposition agreements between spouses are binding upon the court, unless unconscionable, in marital dissolution proceedings, the court is not bound by agreements providing for the support, custody, and visitation of children. [Citation.] Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests. Former spouses might agree to modify child support obligations, benefiting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests. [Citations.] *It is for this reason, then, that parents may create an enforceable agreement for modification of child support only by [(1)] petitioning the court for support modification and then [(2)] establishing, to the satisfaction of the court, that an agreement reached between the parties is in accord with the best interests of the children.*" (Emphasis added.) (*Blisset*, 123 Ill. 2d at 167-68.) The court then held that the parents' agreement was unenforceable because they failed to obtain judicial approval of their agreement, but rather usurped the judicial function by modifying the court-ordered child support obligation themselves. *Blisset*, 123 Ill. 2d at 168.

*Huckaby* also involved an agreement between parents to release a child support obligation in exchange for visitation rights. (*Huckaby*, 75 Ill. App. 3d at 196-97.) The court had adopted the agreement and incorporated it into its order. (*Huckaby*, 75 Ill. App. 3d at 197.) The appellate court found the agreement unenforceable for public policy reasons and explained that the court's adoption of the order did not enhance its legal viability. *Huckaby*, 75 Ill. App. 3d at 199.

Respondent seeks to distinguish *Blisset* and *Huckaby* from this case on several grounds. First, he maintains, those cases involved parents who contracted *away* child support obligations in exchange for agreeing not to visit their children (see also Annot., 100 A.L.R.3d 1129 (1983)), whereas, here, the parents willingly agreed to modify an earlier court order, thereby increasing the noncustodial parent's court-ordered support payments by over $1,000 per month; therefore, neither parent bargained away the child's interests. Second, this case involves a current and future support obligation, not a past obligation that was abrogated. Third, the court's affirmation of the parties' agreement here was based on actual evidence presented to the court.

In the case *sub judice*, petitioner sought a modification of child support based upon the parties' changed circumstances and the child's increased needs. The court heard evidence concerning the parties' respective incomes and expenses, and the child's expenses, over the course of three days. The parties then advised the court that they had agreed on a settlement of the child support issue. Accordingly, the court entered an agreed order which increased respondent's court-ordered child support payments from $175 to $1,200 per month. Under these circumstances, *Blisset*'s first requirement that the parties petition the court for child support modification was undoubtedly met. (See *Blisset*, 123 Ill. 2d at 167-68.) Whether *Blisset*'s second requirement—that the parents establish, to the satisfaction of the court, that the agreement between the parties is in accord with the best interests of the child—was met is questionable. (See *Blisset*, 123 Ill. 2d at 168.) The agreed order entered by the circuit court stated that "the *parties* [had] *deemed* [the child support agreement to be] in the best interest of the parties and their child." (Emphasis added.) The court itself never found the agreement to be in the best interest of the child.

■ Petitioner contends that the circuit court in this cause never independently considered the best interests of the child because it abrogated its role as the chief arbiter of the proper amount of child support by not complying with the aforementioned mandates of section 505(a). We hold that the mandates of section 505(a) clearly apply when a court is determining a child support award, as well as where settlement agreements concerning child support payments are formulated by the parties and adopted by the court, as here.

The State, through its courts, must act to protect the interests of children in this situation. *Blisset* specifically places the responsibility for safeguarding a child's interest in support upon the courts. (*Blisset*, 123 Ill. 2d at 167-68.) It is the court's responsibility and not the parties' to determine the adequacy and amount of child support. (*Blisset*, 144 Ill. App. 3d at 1092.) The court is obligated to protect the child's best interests. (*Blisset*, 123 Ill. 2d at 167.) A parent cannot always be trusted to put his or her children's interests before his or her own. (*Blisset*, 123 Ill. 2d at 168.) Requiring courts to comply with section 505(a) before entering settlement agreements concerning child support is an assurance toward the end that the best interests of children will be protected. Courts may approve of and enter agreed orders for child support; however, when the agreed-upon support is less than that provided for in the guidelines, the court must hear evidence on the relevant factors set forth in section 505(a)(2) and make express findings for allowing the deviation.

Respondent challenges this court's authority to vacate an agreed order for child support which was approved by the circuit court and entered during trial by agreement of the parties. He correctly notes that, as a general proposition, a consent decree is not appealable because it does not constitute an adjudication of the parties' rights but is a mere recordation of their private agreement. (*Wallenius v. Sison* (1993), 243 Ill. App. 3d 495, 502, 611 N.E.2d 1096.) Once a consent decree has been entered, he contends, it is generally considered to be binding on the parties and it cannot be amended or varied without the consent of each party. (*Wallenius*, 243 Ill. App. 3d at 502.) There are exceptions, as a circuit court has potential authority to modify a consent decree if the circumstances so warrant: such is the case if a court of equity is satisfied that the consent decree resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the parties' bargaining positions, or newly discovered evidence. (*Wallenius*, 243 Ill. App. 3d at 503.) Respondent concludes that since petitioner did not allege any of the above circumstances, the settlement agreement cannot be vacated.

Although not cited by respondent, there are cases applying the above principles to child support agreements. "Settlement agreements as they relate to child support are looked upon favorably by Illinois courts, and such agreements will not be set aside absent clear and convincing evidence that the agreement was entered as a result of coercion, fraud, duress or the agreement is contrary to public policy or morals." (*In re Marriage of Falat* (1990), 201 Ill. App. 3d 320, 325-26, 559 N.E.2d 33, citing *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 206, 536 N.E.2d 946; *Stutler v. Stutler* (1978), 61 Ill. App. 3d 201, 204, 377 N.E.2d 862.) None of the foregoing authorities have upheld agreements between the parties which contravene statutory provisions as in this case, however. Indeed, the *Falat* court was careful to note that the circuit court *does* have the authority to modify a child support provision entered in accordance with a settlement agreement. *Falat*, 201 Ill. App. 3d at 326 (and cases cited therein); see also 750 ILCS 5/502, 510 (West 1992).

We have weighed carefully the public policy favoring settlement agreements against the court's responsibility to safeguard children's interest in child support, and conclude that the latter must prevail in the circumstances of this case. The duty of a parent to support his or her minor child arises out of a natural relationship which transcends any contractual obligation. (*Nelson v. Nelson* (1950), 340 Ill. App. 463, 468, 92 N.E.2d 534.) The legislature, in enacting section 505(a), clearly expressed its intent that children receive support in the amount set

forth in section 505(a)'s guidelines unless the court hears evidence on certain factors and makes express findings for allowing a deviation from those guidelines. This statute was intended to protect the rights of children to be supported by their parents in an amount commensurate with their income. Agreements between the parties which ignore the statute's mandate cannot be condoned. *Cf. In re Marriage of Michael* (1992), 226 Ill. App. 3d 1088, 1090, 590 N.E.2d 998.

Accordingly, the circuit court's denial of petitioner's motion to reconsider is reversed, and the portion of the agreed order awarding petitioner $1,200 per month in child support is vacated. The cause is remanded to the circuit court, which is instructed to comply with section 505(a) in reconsidering the child support award. In particular, the court is instructed to make express findings if it allows a deviation from the support guidelines.

■ Respondent's other contentions remain to be addressed. He maintains that petitioner waived review of this issue because she never requested the court to make express findings explaining its deviation from the guidelines, citing *In re Marriage of Harper* (1989), 191 Ill. App. 3d 245, 246-47, 547 N.E.2d 574. Petitioner did alert the circuit court to the statutory requirement of express findings in her motion to reconsider, filed February 16, 1993. Her action sufficiently preserved the issue. See *In re Marriage of Wright* (1991), 212 Ill. App. 3d 392, 398, 571 N.E.2d 197.

■ Respondent also counters that his attorney presented the court with sufficient evidence to support the deviation from the guidelines. He reviews the evidence concerning both his and petitioner's income and expenses. He points out that he has three children, the parties' child, a child within his current marriage, and a third child who attends college. He asserts that petitioner's expense affidavits for her and the child were inflated through several means, raising an issue of petitioner's credibility. Moreover, he correctly notes that petitioner testified she sought 100% of the child's expenses from respondent, which, he submits, is against public policy. Additionally, respondent properly points out that when a parent's income is high, courts are justified in deviating from the guidelines in those cases where following the guidelines would result in children being awarded amounts far in excess of that needed for the life-style they are accustomed to (*In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385, 392-93, 561 N.E.2d 402) or would result in windfalls (*In re Marriage of Lee* (1993), 246 Ill. App. 3d 628, 644, 615 N.E.2d 1314). Respondent does not claim that the circuit court made express findings of such, nor does he claim it stated the above evidence as reasons for allowing the deviation. Therefore, his contentions may be correct, but are inapposite to this appeal. The circuit court is directed to consider

these arguments upon remand should those contentions be renewed there.

## II

Petitioner next argues that the circuit court abused its discretion in entering the agreed order for child support based solely upon the needs of the child. Respondent claims that there is no evidence to substantiate this claim.

Both parties agree that it is improper to limit child support to only the shown needs of the child. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296-98, 483 N.E.2d 1229.) The aforementioned guidelines must be followed, with the court stating its reasons for ordering a deviation from those guidelines on the record. 750 ILCS 5/505(a)(2) (West 1992).

■ Here, the court entered the agreed order of the parties without stating reasons for allowing a substantial deviation from the child support guidelines. It is speculative to say that the court allowed the agreed order to be entered based solely upon the shown needs of the parties' child. If, upon remand, the circuit court allows a substantial deviation from the support guidelines, it must express its reasons pursuant to section 505(a)(2).

For the reasons expressed in this opinion, that portion of the agreed order awarding petitioner $1,200 per month in child support is vacated, and this cause is reversed and remanded to the circuit court with directions.

Vacated in part; reversed and remanded with directions.

DiVITO, P.J., and McCORMICK, J., concur.