No. 2--04--0235

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In re
 MARRIAGE OF BELINDA A. ) Appeal from the Circuit Court

HIGHTOWER, ) of Lake County.

)

Petitioner-Appellant, )

)

and ) No. 01--D--1070

)

LARRY M. HIGHTOWER, ) Honorable

) Gary G. Neddenriep,

Respondent-Appellee. ) Judge, Presiding.

.

JUSTICE GROMETER delivered the opinion of the court:

The circuit court of Lake County entered judgment dissolving the marriage of petitioner, Belinda A. Hightower, and respondent, Larry M. Hightower, on the ground of irreconcilable differences.  On appeal, petitioner challenges several aspects of the judgment, including grounds, child support, and dissipation.  We reverse and remand as to that portion of the judgment relating to child support but we otherwise affirm.

Petitioner and respondent were married on August 18, 1984.  The only child of the marriage, Christopher, was born on June 27, 1989.  Petitioner filed a petition for dissolution of marriage on May 11, 2001, listing "irreconcilable differences" as the ground for dissolution.  On April 29, 2002, petitioner filed a petition for a finding of dissipation of marital assets.  On January 16, 2003, the parties reached a settlement, which was reduced to writing and signed by both parties and their attorneys.  This "Memorandum of Settlement" disposed of the parties' property, provided that each party waived maintenance, and awarded sole custody of Christopher to petitioner.  With respect to child support, the agreement contained the following language:

"CHILD SUPPORT IS RESERVED, BY REASON OF [Respondent's] WAIVER OF MAINTENANCE, WHICH OTHERWISE WOULD HAVE BEEN APPROXIMATELY $1150 PER MONTH.  IN THE EVENT THAT [Respondent's] NET INCOME SUBSTANTIALLY EXCEEDS $2,000 PER MONTH, CHILD SUPPORT MAY BE REVIEWED ON PETITION."

The case was continued by court order to January 31, 2003, for prove up and entry of a final judgment of dissolution.  However, that hearing never took place.

On February 14, 2003, petitioner informed the trial court that she intended to amend her pleadings to request dissolution on grounds other than those listed in her initial petition.  The court continued the matter to March 3, 2003, "by which time Petitioner shall have filed and set by notice her motion to amend."  On February 26, 2003, respondent filed a motion to enforce the parties' settlement agreement, arguing that petitioner breached the agreement when she appeared before the court on February 14, 2003, without notice to respondent, seeking to amend her petition for dissolution.

On March 3, 2003, respondent sought leave to file a counterpetition for dissolution of marriage.  On the same date, the trial court entered an order denying petitioner's request to amend her petition as to grounds and granting respondent leave to file his counterpetition 
instanter
.  The order also provided that petitioner is "granted leave to withdraw her Petition for Dissolution of Marriage and is deemed to have done so" and that "no ruling is made on the Motion to Enforce Settlement."  The matter was set for trial on September 3, 2003.  Meanwhile, on March 17, 2003, petitioner moved to file a new petition for dissolution of marriage  On April 10, 2003, the trial court entered an order granting petitioner leave to file the new petition for dissolution of marriage and respondent leave to file an amended counterpetition.  The court also ordered the parties to "carry out the provisions of the settlement agreement" within 60 days.

In her April 10, 2003, petition for dissolution of marriage, petitioner listed adultery as the ground for dissolution.  She also claimed that the parties had not reached an agreement regarding the issues of child support, custody, visitation, disposition of property, and maintenance.  In his amended counterpetition for dissolution of marriage, respondent listed as grounds for dissolution irreconcilable differences and mental cruelty.  Respondent denied that the parties should be granted dissolution on the ground of adultery, because petitioner "has forgiven and condoned any purported acts of adultery."  Respondent also asserted that the parties had reached an agreement as to child support, custody, visitation, property disposition, and maintenance.  In reply, petitioner denied that she ever condoned or forgave respondent for his acts of adultery.

A trial as to grounds was held on September 3, 2003.  Admitted into evidence at trial was a document dated October 13, 1987, from the Court of Common Pleas of Hamilton County, Ohio, in which respondent admitted to the existence of a parent-child relationship between himself and Lauren N. Ford, born December 29, 1986.  On the witness stand, respondent testified that he and petitioner began marital counseling in 1995.  During one of the counseling sessions, the question of respondent's fidelity arose.  In the fall of 1996, respondent told petitioner that he had fathered Lauren.  The parties continued marital counseling through 1997.  Between 1997 and 1999, the couple attended marriage retreats.  Respondent testified that petitioner forgave him for his infidelity and that they resided together as husband and wife, shared the same room, shared domestic duties, and had an intimate relationship until petitioner filed for divorce in May 2001.  Respondent moved out of the marital home on or about August 31, 2001.

Petitioner acknowledged that she and respondent attended marital counseling between 1995 and 1997, during which time respondent admitted that he had been unfaithful to her.  The couple also attended marriage retreats from 1997 through 1999.  However, petitioner testified that respondent had never told her that he fathered Lauren.  Moreover, petitioner stated that although she first learned of Lauren's existence in 1995 or 1996 from a private investigator she had hired, she was unable to confirm that Lauren was respondent's daughter until April 2001, when she received a copy of the Hamilton County, Ohio, court document.

Based on this evidence, the trial court concluded that respondent proved the defense of condonation.  The court found the issue of Lauren's existence to be irrelevant because respondent admitted that he had been unfaithful to petitioner.  Moreover, the court determined that, following respondent's admission, the parties engaged in "heavy duty counseling" and continued to reside together for years.  Accordingly, the court ruled that the judgment of dissolution should issue on the ground of irreconcilable differences.  Petitioner's attorney then stated:

"Thank you, your Honor.  Let's have a date for the preparation of a judgment.  I would remind you, your Honor, that all the property, custody and maintenance issues have been resolved and a judgment of dissolution of marriage would be an exceedingly simple document containing the findings as you have just read into the record and dissolving the marriage."

On October 8, 2003, over petitioner's objection, the trial court entered a judgment of dissolution listing "irreconcilable differences" as the ground.  The court found the parties' January 16, 2003, settlement agreement to be "fair, equitable, and not unreasonable," and incorporated the provisions of the settlement into the judgment of dissolution.  On November 6, 2003, petitioner filed a "Motion to Reconsider, Vacate and Stay" the judgment of dissolution.  The trial court denied petitioner's request, and this appeal ensued.

Petitioner first asserts that the trial court erred in denying her April 10, 2003, petition for dissolution of marriage on the ground of adultery.  Section 401(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/401(a)(1) (West 2002)) lists adultery as one of the grounds for dissolution.  In this case, it is undisputed that respondent was unfaithful to petitioner during the parties' marriage.  However, respondent raised the affirmative defense of condonation.

"Condonation, in the law of divorce is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness."  
Quagliano v. Quagliano
, 94 Ill. App. 2d 233, 237 (1968).  Condonation is a question of intent and is to be shown by words and deeds that reflect full, free, and voluntary forgiveness.  
Jackson v. Jackson
, 34 Ill. App. 3d 407, 410 (1975).  The burden is on the party raising the affirmative defense of condonation to prove by a preponderance of the evidence that the wronged party intended to forgive the matrimonial offenses of his or her spouse.  
In re Marriage of Rogers
, 74 Ill. App. 3d 351, 354 (1979).  Whether an injured spouse intended to forgive the marital offense is a question of fact (
Jackson
, 34 Ill. App. 3d at 410), which turns on appraising the credibility of the witnesses and weighing their testimony (
Kovack v. Kovack
, 131 Ill. App. 2d 382, 384-385 (1971)).  We will not overturn the trial court's finding on the issue of condonation unless it is against the manifest weight of the evidence.  
McCarrel v. McCarrel
, 48 Ill. App. 3d 666, 669 (1977).

In determining whether a party intended to forgive his or her spouse's behavior, courts look to a combination of factors, including an expression of forgiveness (
Rogers
, 74 Ill. App. 3d at 354), the fact of cohabitation (
Rasgaitis v. Rasgaitis
, 347 Ill. App. 477, 481-82 (1952)), the length of time the parties cohabited after the injured spouse learned of the matrimonial offense (
Klekamp v. Klekamp
, 275 Ill. 98, 104 (1916); 
Abbott v. Abbott
, 192 Ill. 439, 442-43 (1901)), whether the cohabitation was the result of necessity (
Rogers
, 74 Ill. App. 3d at 354; 
Roback v. Roback
, 59 Ill. App. 2d 222, 228 (1965)), and whether the parties continued to have sexual relations (
Seniuta v. Seniuta
, 31 Ill. App. 3d 408, 418 (1975)).  In this case, petitioner admitted that she learned of petitioner's infidelity between 1995 and 1997 while the parties were undergoing counseling.  Respondent testified that petitioner forgave him for his conduct.  The parties continued to live together for several years following respondent's admission, and there was no evidence that this living arrangement was continued out of necessity.  Moreover, respondent testified that he and petitioner shared the same room, shared domestic duties, and continued sexual relations until petitioner filed for divorce in May 2001.  Based on this evidence, we conclude that the trial court's finding on the issue of condonation is not against the manifest weight of the evidence.

Petitioner claims that a finding of condonation was improper because she was unable to confirm Lauren's existence until 2001.  However, petitioner admitted at trial that she first learned of Lauren's existence in 1995 or 1996 from a private investigator she had hired.  In addition, she knew by the mid-nineties that respondent had been unfaithful.  Despite this knowledge, petitioner listed "irreconcilable differences," not "adultery," as the ground for dissolution in her initial petition.  This fact, in conjunction with the evidence cited in the previous paragraph, buttresses the trial court's ruling that petitioner intended to forgive respondent for his infidelity.

Petitioner next challenges the decision of the trial court to incorporate the January 16, 2003, "Memorandum of Settlement" into the judgment of dissolution.  Petitioner attacks the "Memorandum of Settlement" on two fronts.  She advances several general reasons why the trial court abused its discretion in incorporating the settlement agreement into the judgment of dissolution.  In addition, she specifically asserts that the terms of the settlement agreement with respect to the issue of child support violate section 505 of the Act (750 ILCS 5/505 (West 2002)).

The Act encourages the amicable settlement of disputes between parties seeking to dissolve their marriage.  750 ILCS 5/502(a) (West 2002).  To this end, the Act permits the parties to enter into a written or oral agreement containing provisions for the disposition of property, the maintenance of either spouse, and the support, custody, and visitation of the parties' children.  750 ILCS 5/502(a) (West 2002); 
In re Marriage of Sheetz
, 254 Ill. App. 3d 695, 697 (1993).  Agreements regarding the disposition of property and maintenance are binding upon the court unless they are found to be unconscionable.  750 ILCS 5/502(b) (West 2002); 
Blisset v. Blisset
, 123 Ill. 2d 161, 167 (1988).  However, a court is not bound by agreements relating to the support, visitation, and custody of the children.  750 ILCS 5/502(b) (West 2002); 
Blisset
, 123 Ill. 2d at 167; 
Sheetz
, 254 Ill. App. 3d at 698.

We first address whether the terms of the settlement agreement with respect to the issue of child support violate section 505 of the Act (750 ILCS 5/505 (West 2002)).  Whether section 505 applies to settlement agreements providing for child support is a question of law subject to 
de novo
 review.  See 
In re Marriage of Lindman
, ___ Ill. App. 3d ___, ___, 824 N.E.2d 1219, 1221 (2005).  Section 505(a)(1) of the Act states that "[t]he Court shall determine the minimum amount of support" using the guidelines set forth in the statute.  750 ILCS 5/505(a)(1) (West 2002).  The guidelines provide that for one child, the supporting party shall contribute 20% of his or her net income.  Section 505(a)(2) of the Act (750 ILCS 5/505(a)(2) (West 2002)) provides that the guidelines "shall be applied in each case unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child in light of evidence including but not limited to one or more" of five factors listed in the statute.  Section 505(a)(2) further provides that if the court deviates from the guidelines, the court's finding must state (1) the amount of child support that would have been required under the guidelines, if determinable, and (2) the reason or reasons for the variance from the guidelines.  750 ILCS 5/505(a)(2) (West 2002).

In 
In re Paternity of Perry
, 260 Ill. App. 3d 374 (1994), the court addressed whether a circuit court must comply with section 505(a) of the Act when entering an agreed order for child support that deviates from the minimum support guidelines set forth in the statute.  Citing to 
Blisset
, 123 Ill. 2d 161, the 
Perry
 court noted that the duty for safeguarding a child's interest in support rests with the courts and that it is the responsibility of the courts, not the parties, to determine the adequacy and amount of child support.  
Perry
, 260 Ill. App. 3d at 380.  The 
Perry
 court reasoned that requiring courts to comply with section 505(a) prior to sanctioning settlement agreements regarding child support assures that the best interests of children will be protected.  
Perry
, 260 Ill. App. 3d at 380.  The court then held that, while a court may approve of and enter agreed orders for child support in an amount less than that provided for in the guidelines, it must first hear evidence on the relevant factors set forth in section 505(a)(2) and make an express finding as to the reason for the deviation.  
Perry
, 260 Ill. App. 3d at 380.  Although 
Perry
 dealt with a modification of child support, its principles apply equally to initial judgments of dissolution based on settlement agreements.  See 
Sheetz
, 254 Ill. App. 3d at 698.

We find the reasoning of 
Perry
 persuasive and conclude that the application of the principles expressed in 
Perry
 requires us to remand this cause to the trial court for compliance with section 505 of the Act (750 ILCS 5/505 (West 2002)).  The provision for child support in the parties' settlement agreement deviates from the guidelines contained in section 505(a) of the Act (750 ILCS 5/505(a) (West 2002)).  Yet absent from the record is any indication that the trial court heard evidence on the relevant factors set forth in section 505(a)(2) and determined that, after considering Christopher's best interests, application of the guidelines would be inappropriate.  In addition, the record does not contain a finding with respect to the amount of child support that would have been required under the guidelines.  
Cf.
 
In re Marriage of Minear
, 181 Ill. 2d 552, 565-66 (1998) (holding that where judgment of dissolution contained information from which guideline support figure could be easily calculated, provisions of section 505 were satisfied).  While the judgment arguably contains the reason for not requiring child support, 
i.e.
, waiver of maintenance (see 
Minear
, 181 Ill. 2d at 565-66 (holding that brief explanation for deviation in judgment of dissolution was sufficient to satisfy section 505(a)(2)'s requirement as to the reason for the variance), we conclude that the remaining deficiencies require us to remand the cause for compliance with section 505 of the Act.

With respect to the remainder of the settlement agreement, petitioner asserts that the trial court abused its discretion in incorporating the agreement into the judgment of dissolution of marriage.  In support of her position, petitioner first argues that the trial court "never made the mandatory and requisite statutory findings that the Memorandum of Settlement was fair, reasonable and not unconscionable in accordance with Section 502 of the [Act]."  Petitioner is mistaken.  As noted above, section 502(b) of the Act provides that the terms of an agreement, except those providing for the support, custody, and visitation of children, are binding upon the court unless the court finds the agreement unconscionable.  750 ILCS 5/502(b) (West 2002).  However, the statute does not require the court to expressly state that the agreement was "fair, reasonable, and not unconscionable" as petitioner claims.  To the extent that the statute could be so interpreted, we note that, in paragraph 13 of the judgment of dissolution of marriage, the court expressly found the parties' January 16, 2003, agreement to be "fair, equitable, and not unreasonable."  This satisfied any implicit requirement that the statute may contain regarding such a finding by the trial court.

Petitioner further asserts that she rejected the settlement agreement, when, on January 17, 2003, the day after the parties and their attorneys signed the "Memorandum of Settlement," she sent an "urgent" facsimile to her attorney, outlining a number of concerns she had with respect to the purported agreement.  However, this "urgent" correspondence is absent from the record, resulting in waiver of this claim on appeal.  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984) (noting that it is appellant's burden to present a sufficiently complete record to support contentions on appeal).  Petitioner also characterizes the terms of the settlement as "overbroad" and claims that she disavowed any settlement agreement in her April 10, 2003, petition for dissolution of marriage.  However, several events occurred after April 10, 2003, that evidence a contrary intent.  First, in the same order granting petitioner leave to file her April 10, 2003, petition for dissolution, the court ordered the parties to "carry out the provisions of the settlement agreement" within 60 days.  Petitioner did not object to the entry of this order.  Indeed, prior to the entry of the judgment of dissolution, the parties complied with certain provisions of the settlement agreement.  Moreover, at the conclusion of the trial on September 3, 2003, petitioner's attorney informed the court that "all the property, custody and maintenance issues have been resolved" and that "a judgment of dissolution of marriage would be an exceedingly simple document."  It was not until October 8, 2003, that petitioner objected to the entry of the judgment of dissolution.  However, we are unable to discern from the record the exact nature of this objection, and a general objection does not preserve error for review.  
People v. Pastorino
, 91 Ill. 2d 178, 192 (1982); 
People v. Bock
, No. 1--03--2273, slip op. at 16 (April 22, 2005).  Accordingly, we conclude that, with the exception of the matter of child support, the trial court properly exercised its discretion in incorporating the settlement agreement into the judgment of dissolution.

Finally, petitioner asserts that the trial court erred in failing to consider evidence of dissipation by respondent.  We disagree.  Rule 2.01(m) of the Nineteenth Judicial Circuit, of which Lake County is part, provides:

"The burden of calling for hearing any motion previously filed is on the party making the motion.  If any such motion is not called for hearing within sixty (60) days from the date it is filed, the Court may consider the motion denied by reason of delay."  19th Judic. Cir. Ct. R. 2.01(m) (eff. January 2, 1997).

In this case, the record shows that petitioner filed her petition for dissipation of marital assets on April 29, 2002.  The record contains a "Notice of Filing," but does not contain any pleading requesting a hearing on the petition.  Moreover, it does not appear that any further action was taken with respect to this petition by either petitioner, respondent, or the court.  Further, as we have previously mentioned, petitioner's attorney represented to the court at the conclusion of trial on September 3, 2003, that "all other property, custody and maintenance issues have been resolved."  Accordingly, we deem this issue waived.  See 
Zito v. Zito
, 196 Ill. App. 3d 1031, 1036 (1990) (holding that the respondent's failure to file a pretrial memorandum claiming dissipation and his failure to argue the matter constituted waiver).

For the aforementioned reasons, we reverse that portion of the judgment of the circuit court of Lake County on the issue of child support.  We further remand the cause for a determination of child support in compliance with section 505 of the Act (750 ILCS 5/505 (West 2002)).  We affirm the judgment in all other respects.

Affirmed in part and reversed in part; cause remanded with directions.

O'MALLEY, P.J., and McLAREN, J., concur.